**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE: ) | Chapter 11 |
| ) | (Involuntary) |
| SPECIALTY HOSPITAL OF ) | |
| WASHINGTON, LLC, ) | Case No. 14-10935 (BLS) |
| ) | |
| Putative Debtor. ) | Hearing Date: TBD |
| ) | Objection Deadline: TBD |

**PETITIONING CREDITORS' EMERGENCY MOTION FOR
AN ORDER DIRECTING THE APPOINTMENT OF A CHAPTER 11 TRUSTEE**

Capitol Hill Group; CMH Inc. d/b/a CroppMetcalfe; JFW Services, LLC; J-Don Enterprises, LLC; Metropolitan Medical Group, LLC; and Amalgamated Capital Partners, LLP (the "Petitioning Creditors") hereby file this Emergency Motion for an Order Directing the Appointment of a Chapter 11 Trustee (the "Motion") in this Chapter 11 case for Specialty Hospital of Washington, LLC (the "Putative Debtor"), and in support thereof state:

**INTRODUCTION**

1. The Petitioning Creditors brought this involuntary case due to the Putative Debtor's inability to meet its basic financial obligations. In light of the ongoing diminution of the Putative Debtor's estates and the profound confusion concerning the Putative Debtor's finances, it is appropriate to appoint a Chapter 11 Trustee to act as a fiduciary for the benefit of all creditors in this case.

2. Due to the critical nature of human care and the threat that a disruption in operations could cause to the welfare of the patient population, the Petitioning Creditors are requesting an expedited hearing on their motion for appointment of a trustee. For the reasons set out more fully below, the principal owners of the Putative Debtor, Mr. James Rappaport, Mr. Robert Rummler, and Mr. Frank Wilich, (hereinafter the "Principals") along with the Putative

Debtor's management team, have demonstrated an inability to effectively run the Putative Debtor's operations, which in turn jeopardizes the go-forward care of the patient population. Cause exists for the immediate appointment of a Chapter 11 Trustee.

## JURISDICTION

3. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue lies properly in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157.

4. Petitioning Creditors seek relief in this Motion based upon section 1104(a)(1) or (2) of 11 U.S.C. § 101, et seq. (the "Bankruptcy Code") and Federal Rule of Bankruptcy Procedure 9014.

## BACKGROUND

5. The Putative Debtor, Specialty Hospital of Washington, LLC ("SHW"), owns and operates a 60-bed Long Term Acute Care Hospital ("LTACH") in Washington D.C. located at 700 Constitution Avenue, NE, Washington, DC. Specialty Hospital of Washington – Nursing, LLC ("SHW-Nursing") owns and operates a 117-bed Skilled Nursing Facility ("SNF") at the same location. SHW and SHW-Nursing are both owned by Specialty Hospitals of America, Inc. ("SHA"). LTACH and SNF facilities provide medical care and services to a population that has been diagnosed with high acuity and life-threatening illnesses. (See Exhibits A and B).

6. The continued operation of both the LTACH and SNF are critical to serving the Medicaid and Medicare population of the city. The continued financial and operational mismanagement of Putative Debtor by its Principals and its managers will make it more difficult to successfully restructure the debts and salvage what remains of the business either through a restructuring or sale.

7.  With each additional day, due to the economic scheme that the Principals along with the Putative Debtor's management team have devised, the go-forward operation of the LTACH is further endangered.

8.  For an extended period of time, the Putative Debtor has failed to meet its basic and ongoing financial obligations. Upon information and belief, the Putative Debtor owes more than $50 million in tax liens, judgments and commercial debt. (See Exhibit C). As set out in more detail below, the Principals have knowingly created and continue to create further indebtedness by accepting Medicare and Medicaid overpayments. Further, its mismanagement has resulted in a dramatic decline in patient census. Additionally, upon information and belief, Putative Debtor has paid and continues to pay significant amounts in compensation to its Principals, while at the same time, it refuses to pay its creditors for goods and services. The Putative Debtor owes the Petitioning Creditors, collectively, more than $2.5 million for services and/or goods provided and, has simply been unable to meet its most basic financial obligations, including payment of rent and physicians, for the past several months. Also, in violation of federal law, Putative Debtor has fraudulently used the federal employer identification number of one of the Petitioning Creditors herein on 1099 Forms sent by Putative Debtor to persons and entities compensated by the Putative Debtor in 2013. In addition, upon information and belief, Putative Debtor has failed to pay federal wage taxes in an amount in excess of $14 million.

9.  The Petitioning Creditors have also been made aware that the Principals have proposed a sale of the Putative Debtor and/or Putative Debtor's assets contingent upon the purchaser relieving the Principals of some or all of their personal liabilities without making funds available to the landlord, other general unsecured creditors, the federal and state healthcare agencies, and federal and state taxing authorities. (See Exhibit D.)

3

10. **MEDICARE OVERPAYMENTS.** Putative Debtor receives periodic interim payments ("PIP") from the federal Center for Medicare and Medicaid Services ("CMS"). These Medicare payments are made by CMS to Putative Debtor every two weeks. Such payments are generally based on the hospital census during the preceding six-month period and are updated twice each calendar year. Putative Debtor currently receives approximately $1,272,000 in monthly PIP payments, which amount is based on a historical hospital census of approximately 45 patients. In the last twelve months, the Putative Debtor's hospital census dropped from 45 to 15 patients, evidencing a precipitous decline. (See Exhibit A). Upon information and belief, the Putative Debtor has not made any attempt to contact CMS and request that its PIP be reduced accordingly. As a result, CMS is substantially overcompensating Putative Debtor, in the range of $400,000 per month, by its current PIP. The total current overpayment due Medicare exceeds $2,500,000. (See Exhibit D). Under federal law, such overpayments must be recouped by CMS. Such recoupment typically takes the form of a reduction in future PIP. Putative Debtor is amassing a liability which it will not be able to repay, and which will make the financial aspects of the operations more difficult for any successor. Notably, federal rules and regulations for long term acute care hospitals will likely require any successor entity to utilize Putative Debtor's current Medicare provider number; therefore, the successor entity will likely be required to pay CMS for the PIP overpayments. This ever-growing liability will significantly reduce a successor's cash flow going forward until the overpayment is fully recouped by CMS. Putative Debtor management's previous and ongoing actions have impaired and will continue to impair any successor's future financial viability.

11. **MEDICAID OVERPAYMENT.** In December 2013, an Administrative Law Judge for the District of Columbia determined that Putative Debtor received and must reimburse

overpayments from D.C. Medicaid for the years 2007 through 2010 in the approximate amount of $7.5 million. These overpayments were based upon reports and information supplied to D.C. Medicaid by Putative Debtor. (See Exhibit E).

12. **FAILURE TO MAINTAIN PATIENT CENSUS.** Putative Debtor is presently licensed for 60 LTACH beds. One year ago, the Putative Debtor's census was approximately 45 patients. Six months ago, this census declined to approximately 35 patients. As of this writing, the census has declined even further to only 15 patients, an historically low level. (See Exhibit A). Any successor entity to Putative Debtor will inherit a reduced level of accounts receivable stemming from the inadequate patient census caused by Putative Debtor's mismanagement. Further, the Putative Debtor's management is currently considering the option of stopping all admissions. (See Exhibit F).

13. **INSIDER COMPENSATION.** Approximately one year ago, Putative Debtor hired its Principals, James Rappaport, Robert Rummler and Frank Wilich, as salaried employees. Their current, combined, annual salaries total $950,000. All of these payments have occurred while Putative Debtor became increasingly unable to make payments owed to its many creditors for goods and services. (See Exhibit D).

14. **PUTATIVE DEBTOR'S FAILURE TO PAY PHYSICIANS**. Upon information and belief, nighttime internists have not been paid since January and have given notice of termination of their contract for breach. (See Exhibits F andG). The Putative Debtor has not paid many physicians, some since July 2013. (See Exhibits H and I). SHW's nighttime physicians, who are critical to patient care for the LTACH operations, have lost faith in current management and have endorsed the appointment of a trustee.

15. **ILLEGAL APPROPRIATION OF FEDERAL EMPLOYER IDENTIFICATION NUMBER.** Petitioner Capitol Hill Group ("CHG"), Putative Debtor's landlord, recently acquired documentation establishing that Putative Debtor used CHG's federal employer identification number ("EIN") on various 1099 Forms which Putative Debtor sent to certain persons and entities compensated by Putative Debtor during 2013.  (See Exhibit B).  The last four digits of CHG's federal EIN are 6561.  The last four digits of the Putative Debtor's federal EIN are 3172.  The appearance of CHG's EIN on these 1099 Forms is not the product of merely transposing a number or two.  The EIN numbers are radically different.  Federal law prohibits an entity from reporting amounts paid to persons on a Form 1099 utilizing the federal EIN of another entity; Putative Debtor's illegal use of CHG's EIN raises numerous troubling questions.

16. **PUTATIVE DEBTOR's FAILURE TO PAY FEDERAL TAXES.** The Internal Revenue Service ("IRS") recently determined that Putative Debtor failed to remit to the IRS approximately $14 million in federal taxes.  (See Exhibit C)

17. **FALSE CLAIM ACT SETTLEMENT AND NO ADMISSION BAN FOR AFFLIATES.** Putative Debtor is one of four affiliated entities providing inpatient health care services in Washington, D.C.  Putative Debtor operates an LTACH at its Capitol Hill location. Its affiliate, Specialty Hospital of Washington – Nursing Center, LLC provides skilled nursing care at the same location. Specialty Hospital of Washington - Hadley, LLC operates an LTACH at its southeast DC location and Specialty Hospital of Washington Hadley – Nursing Center, LLC provides skilled nursing services at the same location. All of these entities are subsidiaries of Specialty Hospitals of America, LLC ("SHA") which is owned by the same three Principals – James Rappaport, Robert Rummler and Frank Wilich.

18. In November 2013, the U.S. Department of Health and Human Services (of which CMS is an agency) announced a settlement in the amount of $4.2 million to resolve False Claim Act allegations that SHA knowingly received reimbursement for inflated Medicare claims. (See Exhibit J). Although this settlement was peculiar to SHA's Hadley LTACH, the same three Principals also control the management and operations of the Putative Debtor.

19. Similarly, the DC DOH issued a Temporary New Admission Ban to SHW-Nursing as a result of poor care in the Nursing Center during the fourth quarter of 2013. (See Exhibit A). Although the sanction was specific to the SHW - Nursing, the same Principals control the management and operations of the Putative Debtor.

20. As a result of Putative Debtor's mismanagement, on April 23, 2014, the Petitioning Creditors commenced this case by the filing of an involuntary petition for relief under Chapter 11 of the U.S. Bankruptcy Code.

21. Given the Putative Debtor management's track record, the Petitioning Creditors assert that the Putative Debtor's management is incapable of operating the Putative Debtor's business as a debtor-in-possession. Allowing it to do so will only further diminish the value of the Putative Debtor's estate.

22. While the Putative Debtor had previously informed the Petitioning Creditors that it intended to file its own Chapter 11 bankruptcy, months have passed without the Putative Debtor taking any such action.

## ARGUMENT

23. 11 U.S.C § 1104(a) provides:

§ 1104.  Appointment of trustee or examiner

(a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee--
   (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or
   (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

11 U.S.C. § 1104(a).

24. In considering whether to appoint a trustee under Section 1104, the Court should consider (i) the trustworthiness of the debtor; (ii) the debtor in possession's past and present performance and prospects for the debtor's rehabilitation; (iii) the confidence - or lack thereof - of the business community and of creditors in present management; and (iv) the benefits derived by the appointment of a trustee, balanced against the cost of the appointment." *In re Euro-American Lodging Corp.*, 365 B.R. 421, 427 (Bankr. S.D.N.Y. 2007) (citing *In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 168 (Bankr. S.D.N.Y 1990)).  Each of these factors weighs in favor of appointing a trustee.

25. First, one of the most important factors considered in weighing the appointment of a Chapter 11 Trustee is the trustworthiness of the management of the debtor-in-possession; *See In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 168 (Bankr. S.D. NY 1990). 137 B.R. 275, 282

(Bankr. N.D. Ill. 1992); *In re Colorado-Ute Elec. Ass'n, Inc.*, 120 B.R. 164, 176 (Bankr. D. Colo. 1990).

26.     The Putative Debtor's management has shown that it cannot be trusted to meet their most basic management obligations.  Putative Debtor's current management has accumulated more than $50 million in tax liens, judgments, and commercial debt, thereby diminishing its value.  It continues to receive unwarranted monthly PIP payments from CMS that must be reimbursed. It owes $7.5 million in D.C. Medicaid Overpayments   It owes $14 million in unpaid federal wage taxes.  Putative Debtor has failed to pay its rent since November, 2013, and has failed to pay physicians since as long ago as July,  2013.  Putative Debtor has used the EIN of another entity, in violation of federal law.    This is not the resume of a trustworthy management team.

27.     These same factors weigh against Putative Debtor on the second element, the debtor in possession's past and present performance and prospects for the debtor's rehabilitation. The current administration has established a pattern of acquiring significant debt, and ignoring current obligations.  Similarly, it has paid its principals large salaries, while sinking deeper in debt.  Most notably, the current management has allowed the patient census to drop from 45 to 14 in less than a year.

28.     The Court should also consider "the confidence - or lack thereof - of the Court, the business community, or creditors in present management." *See In re Ionosphere*, 113 B.R. at 168; *In re Colorado-Ute,* 120 B.R. at 176.  The Putative Debtor's pre-petition fraud and breaches of fiduciary duty greatly weigh against any confidence in the Putative Debtors' present management. Petitioning Creditors have spoken with multiple potential investors in the Putative Debtor's business, which have expressed the view that their consideration of any loans to or

investment in this entity will be dependent on the appointment of a Trustee. Further, SHW's nighttime physicians, who are critical to patient care for the LTACH operations, have lost faith in current management and have endorsed the appointment of a trustee.

29. Finally, the benefits derived by the appointment of a trustee outweigh the costs of appointment. *In re Madison Mgmt.,* 137 B.R. at 282; *In re Ionosphere,* 113 B.R. at 168; *In re Colorado-Ute, 120 B.R. at* 176. The current management has established its incompetence and gross mismanagement in the affairs of the Putative Debtor. It is appropriate to appoint a Chapter 11 Trustee who can meet oversee the daily operation of the business. Further, if timely appointed, a Trustee will maximize the assets of the Putative Debtor by trying to locate possible buyers, lenders and investigating the need to file actions for preferences and fraudulent conveyances.

30. Given management's pre-petition lack of fiduciary integrity, this Putative Debtor is in need of the immediate disinterested oversight of a chapter 11 Trustee.

WHEREFORE, the Petitioning Creditors respectfully request this Court enter an order, in the form attached hereto directing the appointment of a Chapter 11 Trustee to oversee this Putative Debtor's estate.

PHILLIPS, GOLDMAN & SPENCE, P.A.

*/s/ Stephen W. Spence*
Stephen W. Spence, Esquire (DE#2033)
Lisa C. McLaughlin, Esquire (DE#3113)
1200 North Broom Street
Wilmington, DE 19806
302.655.4200
302.655.4200 (fax)
sws@pgslaw.com
lcm@pgslaw.com
*Counsel to Capitol Hill Group, CMH Inc. d/b/a CroppMetcalfe, JFW Services, LLC J-Don Enterprises, LLC, Metropolitan Medical Group, LLC, and Amalgamated Capital Partners, LLP*