IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

In re:

**SPECIALTY HOSPITAL OF WASHINGTON, LLC,** *et al.*,

      **Debtors.**

Case No. 14-00279

Chapter 11

## U.S. TRUSTEE'S EMERGENCY MOTION TO DISMISS CHAPTER 11 CASE

This is a case with no good options. The debtors are in a state of financial crisis and lack the ability to meet payroll and basic operational expenses. However, they are responsible for caring for about 240 patients, many of whom are critically ill. If the debtors are unable to gain financing, this case cannot continue to linger in bankruptcy and jeopardize patient care. Thus, Judy A. Robbins, the United States Trustee for Region 4, by counsel, moves this Court to dismiss this chapter 11 case.

### JURISDICTION

1.    The Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1334.

2.    The United States Trustee files this motion in furtherance of her duties and responsibilities pursuant to 28 U.S.C. § 586, 11 U.S.C. § 307, and 11 U.S.C. § 1112.

### STATEMENT OF FACTS

3.    On May 21, 2014, an order for relief was entered in this case and voluntary petitions filed in the related cases. On May 23, 2014, the Court granted the debtors' motion for joint administration.

4.    The debtors collectively own and operate two long term acute care hospitals ("LTAC"), each of which has an accompanying skilled nursing facility ("SNF"). The two LTAC

Office of United States Trustee
Bradley D. Jones, Trial Attorney
115 South Union Street, Room 210
Alexandria, VA 22314
(703) 557-7228
bradley.d.jones@usdoj.gov

facilities have total capacity for 142 patients and the two SNFs have total capacity of 179. Currently the debtors are caring for about 65 LTAC patients and 175 SNF patients.

5.  According to the debtors, these facilities are the only licensed freestanding LTAC facilities between Philadelphia and Richmond and provide a wide variety of programs and services for critically ill patients. Many of these patients are very fragile, with the debtors estimating that about 4% of the LTAC patients would die in the process of being moved to another facility if a shutdown occurs.[1]

6.  On May 21, 2014, the debtors filed an emergency motion for interim and final orders to obtain debtor in possession financing, authorizing the use of cash collateral, granting priming liens and super-priority claims, granting adequate protection, and scheduling a final hearing (the "DIP financing motion"). Dkt. No. 67.

7.  According to the DIP financing motion, the facilities are currently in a state of financial crisis. They are in monetary default of their lease and secured debt obligations and are behind on payments to their trade creditors. Without the infusion of new operating capital, the debtors will be unable to meet payroll and operational obligations.

8.  The lender objected to the DIP financing motion, raising the issue that it was entitled to adequate protection equal to the value of its collateral as of the petition date. The debtor's emergency motion was denied by this Court on May 23, 2014 because the debtors failed to show that the terms of the financing provided adequate protection to the lender as required by the Bankruptcy Code.

9.  The debtors and lender currently dispute the proper valuation of the collateral and how to determine whether the lender is adequately protected. The debtors contend that the value

---

[1] Given the uncertain nature of the debtors' operations and the potentially critical threat that a disruption could cause the patients, the U.S. Trustee filed an emergency motion to appoint a patient care ombudsman to monitor the quality of patient care during this bankruptcy and report to the Court. Dkt. No. 107. The U.S. Trustee has finished interviewing candidates and is prepared to appoint a PCO as soon as the order on this motion is entered.

of the Hadley property is $4.7 million, based on their appraisal of the raw land as worth $5.2 million less the cost of demolishing the building. The lender contends that the value of the property is worth at least $27 million based on its appraisal of the property as a going concern and the opinion of the District of Columbia's Office of Tax Assessor.

10.     On May 26, 2014, the debtors filed an emergency motion to obtain post-petition financing on a modified basis, relying on their $4.7 million valuation to determine the amount of the priming liens in that amount. Dkt. No. 100. The next day, their lender filed an objection. A hearing on this motion is set for tomorrow, May 29, 2014, at 9:30 a.m.

11.     Yesterday, on May 28, 2014, the debtors filed a sale motion, seeking to conduct an auction of the debtors' assets. The procedures require bids to be submitted seven days from now on June 4, the auction to be held on June 9 and a sale hearing on June 10. No schedules have been filed in these cases. Bankruptcy Rule 1007-I requires schedules to be filed 14 days after the entry of the order for relief, which would be June 4 – the same date that perspective purchasers are required to submit bids.

12.     The debtors are seeking to resolve the valuation dispute and to gain approval of their sale and bidding procedures on an extraordinarily compressed time schedule[2] with little information available to creditors or potential purchasers. Thus, the U.S. Trustee is concerned that absent an agreement with the lender, the debtors will be unable to gain the financing necessary to continue providing services to their patients.

---

[2] The debtors acknowledge that this compressed time frame is motivated to provide protections to their proposed purchaser, Silver Point Capital, LLC. In the sale motion, the debtors state, "shortening the bid and sale process timeline protects Silver Point, which in turn, enables the debtors to obtain post-petition financing to protect and preserve operations and their patients." Dkt. No. 111 at 3. The proposed sale transaction includes a number of substantial bid protections: a 5% breakup fee, a rebate of $200,000 to the proposed purchaser to wind up the debtors' operations, and a requirement that any proposed purchaser place in escrow $4.7 million payable to the lender. In addition, the proposed sale agreement also requires any prospective purchaser to enter into a non-compete agreement and a consulting agreement with three members of the debtors' current management team, paying each in the amount of $200,000. The U.S. Trustee does not understand how this executive compensation agreement is permissible given the requirements of § 503(c).

## LEGAL ARGUMENT

*Dismissal is Preferable to Conversion of the Case or Appointing a Trustee*

Section 1112(b)(1) of the Bankruptcy Code states, "the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate."

If the debtors are unable to obtain post-petition financing tomorrow, the case will require a direction to ensure that the patients are protected and that the facilities are wound-down in an orderly way. The worst result is to allow the case to remain in bankruptcy, without progress, while the debtors' financial condition and ability to care for their patients rapidly deteriorates. In fact, the U.S. Trustee is concerned that this is precisely what's happening now, with the debtors proposing a DIP financing motion, a week after the Court rejected a similar motion with similar terms.

There are no good options here. There is no mechanism in the bankruptcy code that provides safeguards for patient care in the wind-down of a hospital facility that lacks the funds to operate. The U.S. Trustee considered three possible options in the event the debtors cannot obtain DIP financing sufficient to fund their operations: the appointment of a chapter 11 trustee, conversion to chapter 7, or dismissal. Of these, the U.S. Trustee believes dismissal is the best of the bad options.

The biggest threat to patients is that the resolution of this matter will be delayed to the point that the facility suddenly and unexpectedly collapses. The U.S. Trustee believes the appointment of a chapter 11 trustee in a case without funding will be futile and only add delay.

The chapter 11 trustee can only replace current management. He or she cannot pay vendors, leases, or food and medical suppliers if the company has no funds.

Similarly, converting the case to chapter 7 would serve no purpose. While a chapter 7 trustee could operate the facility while it is liquidated, the trustee is a bankruptcy professional and is not in the best position for arranging proper transport of patients to new facilities. There are no funds available to provide payments to unsecured creditors, and the bankruptcy code has no mechanisms that will be beneficial to the patients in this case. If anything, the provisions in the bankruptcy code that provide debtors space and time to reorganize may make complicate efforts to ensure that their interests are protected. Therefore, the U.S. Trustee suggests that the case be dismissed to allow the facilities to be wound down in accordance with applicable non-bankruptcy law.

WHEREFORE, the United States Trustee respectfully requests that this Court enter an order dismissing this case.

May 28, 2014                                          JUDY A. ROBBINS
                                                      U.S. TRUSTEE, REGION 4


                                                      By:  /s/ Bradley D. Jones
                                                           Bradley D. Jones (VSB No. 85095)
                                                           Trial Attorney
                                                           Office of United States Trustee
                                                           115 South Union Street, Suite 210
                                                           Alexandria, VA 22314
                                                           (703) 557-7228

## CERTIFICATE OF SERVICE

      I hereby certify that on May 28, 2014, a true copy of this response was served on the following persons by first class U.S. mail, or by notice of electronic filing:

Specialty Hospital of Washington, LLC
700 Constitution Ave., NE
Washington, DC 20002
*Debtor*

Rick S. Miller
Ferry, Joseph & Pearce, P.A.
824 Market St., Suite 904 Wilmington, DE 19899
*Debtors' Counsel*

Patrick J. Potter
Shaw, Pittman, Potts and Trowbridge
2300 N Street, NW
Washington, DC 20037
*Debtors' Counsel*

        */s/ Bradley Jones*
        Bradley Jones
        Trial Attorney