The order below is hereby signed.

Signed: June 2 2014



_S. Martin Teel Jr._ (signature)

S. Martin Teel, Jr.
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

In re:

SPECIALTY HOSPITAL OF WASHINGTON, LLC, *et al.*,

Debtors.[1]

Case No. 14-00279

Chapter 11

(Jointly Administered with Chapter 11 Case Nos. 14-00295 – 14-00300)

### INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING, (II) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL, (III) GRANTING PRIMING LIENS AND PROVIDING SUPERPRIORITY CLAIMS, (IV) GRANTING ADEQUATE PROTECTION, (V) SCHEDULING FINAL HEARING AND (VI) GRANTING RELATED RELIEF

Upon the emergency motion dated May 26, 2014 (the "**Motion**") of Specialty Hospital of

America, LLC ("**SHA**"), Specialty Hospital of Washington, LLC, SHA Management, LLC,

Specialty Hospitals of Washington Nursing Center, LLC, Specialty Hospital of Washington

---

[1]      The debtors in these chapter 11 cases and each debtor's federal identification number ("EIN") and chapter 11 case number are: Specialty Hospital of Washington, LLC (EIN: 81-0681352; Case No. 14-00279), Specialty Hospital of America, LLC (EIN: 81-0681347; Case No. 14-00295), SHA Holdings, Inc. (EIN: 20-5741943; Case No. 14-00296), SHA Management, LLC (EIN: 81-0681350; Case No. 14-00297), Specialty Hospital of Washington Nursing Center, LLC (EIN: 81-0681348; Case No. 14-00298), Specialty Hospital of Washington Hadley, LLC (EIN: 20-5752586; Case No. 14-00299), and SHA Hadley SNF, LLC (EIN: 20-5741976; Case No. 14-00300).

Hadley, LLC, SHA Holdings, Inc., and SHA Hadley SNF, LLC as debtors and debtors-in-possession (collectively, the "**Debtors**" or "**Borrowers**") in the above-captioned chapter 11 cases (collectively, the "**Cases**") for interim and final orders under sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) of title 11 of the United States Bankruptcy Code (as amended, the "**Bankruptcy Code**") and Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "**Bankruptcy Rules**"), seeking, *inter alia:*

(a)     for Borrowers to obtain postpetition financing (the "**DIP Loan**") in the aggregate amount of up to $15.0 million under a term loan, and forthwith to borrow up to $7.4 million (the "**Interim Disbursement**") under terms of the DIP Term Sheet[2] on an interim basis under this Interim Order, with further borrowings pursuant to final documentation contained in a credit agreement (the "**DIP Credit Agreement**"),[3] between the Borrowers and DCA Acquisitions, LLC (the "**DIP Lender**"); and such DIP Loan:

(i)     having priority, pursuant to § 364(c)(1), over all administrative expenses of the kind specified in Bankruptcy Code § 503(b) or 507(b) (the "**Senior Superpriority Administrative Expense Claim**");

(ii)     being secured, pursuant to § 364(c)(2), by (a) a perfected first priority lien and security interest upon any and all current and future assets of the Borrowers of any nature or type whatsoever, including, without limitation, cash, accounts, accounts receivable (including, without limitation, all Medicare/Medicaid receivables/payment), goods, instruments, investment property (including, without limitation, ownership interests in corporations, partnerships and limited liability companies), inventory, vehicles, customer lists, trademarks, copyrights, brands, know-how and other intellectual property, minerals, mineral rights, plant and equipment, patents, trade secrets, tax assets, real property and/or leasehold rights, personal property, any causes of action or recoveries, excluding those arising under the Bankruptcy Code or against any director or officer of the Debtors (and excluding any insurance policy covering, or recovery therefrom relating to, any cause of action against any director or officer of the Debtors), all other tangible and intangible assets, and any and all proceeds of the foregoing; and (b) constructive control over the Borrowers' bank accounts in similar form and substance of lockbox and/or control accounts customary for transactions of this nature (including, in the case of those accounts which receive the collected proceeds of Medicare and Medicaid accounts receivable, subject to the special rules and limitations applicable thereto),

---

[2]     Capitalized terms not defined herein shall have the meaning ascribed to such terms in the DIP Term Sheet.

[3]     The foregoing notwithstanding, the DIP Lender may in its sole discretion determine to have the DIP Term Sheet serve as the DIP Credit Agreement.

except that duly perfected real property tax liens, if any, shall not be primed  (collectively, the "**DIP Collateral**");

(iii)     being secured, pursuant to § 364(c)(3), by a perfected lien and security interest upon all of the Borrowers' prepetition and postpetition property (including property referred to in clause (ii) above (but *not* including any excluded property identified in clause (ii)), or in clause (iv) below);

(iv)     being secured, pursuant to § 364(d)(1), by perfected first priority senior priming liens on and in the DIP Collateral ranking prior to all other claims and liens of the Borrowers, except for the Carveout (defined below).  The Senior Priming Liens (as defined below) will be senior in priority to security interests and liens securing the indebtedness and other obligations owing under any of the Borrowers' prepetition loan and security agreements and other liens.  The Senior Priming Liens shall not be subject to challenge, but instead shall attach and become valid and perfected without the requirement of any further action by the Agent or the DIP Lender.

(b)     for the Debtor to use the Cash Collateral (as such term is defined in the Bankruptcy Code) pursuant to §§ 361, 362 and 363, and all other collateral identified in the Existing Loan Documents in which the Existing Lienholders have a lien or security interest (together with the Cash Collateral, the "**Prepetition Collateral**");

(c)     to schedule, pursuant to Rule 4001, a final hearing (the "**Final Hearing**") for this Court to consider entry of a final order authorizing the DIP Loan on a final basis, as set forth in the Motion and the DIP Term Sheet; and

(d)     the granting of certain related relief.

The Debtors having requested in the Motion that pending the Final Hearing on the Motion, a hearing be scheduled on an expedited basis to consider entry of this Interim Order; and notice of such expedited hearing having been given to: (a) the Office of the United States Trustee for the District of Columbia; (b) each of the Debtors' thirty-five largest unsecured creditors on a consolidated basis; (c) counsel to Branch Banking & Trust Company ("**BB&T**"); (d) counsel to the DIP Lender and the Agent; (e) counsel to National Capitol Bank of Washington ("**NCB**"); (f) counsel to Capitol Hill Group; (g) all applicable health regulatory agencies and taxing authorities; (h) the United States Attorney's Office for the District of Columbia; (i) the Internal Revenue Service (the "**IRS**"); (j) JWR Realty, LLC ("**JWR**"); and (k) all known parties that may be asserting a lien against the DIP Collateral; and it appearing that on the record made in the

Cases and after considering the Debtors' immediate need for interim financing, no other or further notice need be given; and the DIP Lender having agreed to provide the DIP Loan in accordance with the DIP Term Sheet and this Interim Order.

NOW, THEREFORE, upon the Motion and the record of the Interim Hearing held on May 30, 2014; and after due deliberation and good and sufficient cause appearing therefore, the Court hereby makes the following findings of fact and conclusions of law:

Based upon the record presented to the Court, it appears that:

A.    *Filing*.  On May 21, 2014 (the "**Petition Date**"), each of the Debtors (other than Specialty Hospital of Washington, LLC ("**SHDC**")) filed a voluntary chapter 11 petition in this Court.  On May 21, 2014, the Court entered an order for relief in the case of SHDC.  The Debtors have continued in the management and operation of their businesses and properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B.    *Jurisdiction and Venue*.  This Court has core jurisdiction over the Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  This Interim Order is entered in a "core" proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (D), (G), (K) and (M).

C.    *Notice*.  Notice of the Motion and the Interim Hearing was served by the Debtors on: (a) the Office of the United States Trustee for the District of Columbia; (b) each of the Debtors' thirty-five largest unsecured creditors on a consolidated basis, as listed on the Debtors' list of 35 largest creditors; (c) counsel to BB&T; (d) counsel to the DIP Lender and the Agent; (e) counsel to NCB; (f) counsel to the Debtors' landlords; (g) all applicable health regulatory agencies and taxing authorities; (h) the United States Attorney's Office for the District of Columbia; (i) the IRS; and (j) all known parties that may be asserting a lien against the

Collateral. Under the circumstances, the notice provided of the Motion and the Interim Hearing is sufficient and adequate notice and no further notice of the relief sought at the Interim Hearing is necessary or required.

D.    *Existing Lienholders*.  In the Motion, the Debtors asserted the following facts:

(a)    as of the Petition Date, BB&T,[4] NCB, the IRS, and JWR (collectively, the "**Existing Lienholders**") asserted the following claims against the Debtors: (i) BB&T asserts a secured claim against the Debtors in an amount in excess of $34 million arising from a term loan and revolving line of credit extended to the Debtors (the "**BB&T Claim**"); (ii) NCB asserts a junior, secured claim against SHA that exceeds $6 million arising from a short term loan (the "**NCB Claim**"); (iii) the IRS asserts a secured claim against the Debtors in the approximate that exceeds $11 million arising from alleged unpaid withholding taxes (the "**IRS Claim**"); and (iv) JWR asserts a claim against Specialty Hospital of America, LLC in excess of $5 million under a senior subordinated note agreement (the "**JWR Claim**," together with the BB&T Claim, the NCB Claim, IRS Claim, the "**Prepetition Secured Obligations**"); and

(b)    the Existing Lienholders assert that the Prepetition Secured Obligations are secured by valid, enforceable and perfected liens on the Prepetition Collateral, including, in the case of BB&T, Cash Collateral; and

(c)    the Prepetition Collateral constitutes substantially all of the Debtor's assets.

E.    *Need for Postpetition Financing and Use of Prepetition Collateral (including Cash Collateral)*.  The Debtors have an immediate need to obtain the DIP Loan and to use the Prepetition Collateral including the Cash Collateral.  The Debtors do not have sufficiently

---

[4]    The BB&T Claim was purchased and assigned to the DIP Lender on or about May 30, 2014.

available sources of working capital and financing to carry on the operation of their businesses without the DIP Loan and the Debtors' use of the Prepetition Collateral (including Cash Collateral). The ability of the Debtors to pay employees, maintain business relationships with vendors and suppliers, purchase new inventory, and otherwise finance their operation is essential to the Debtors' continued viability and to the well-being of the Debtors' patients dependent on the Debtors' healthcare services. Without the DIP Loan and the Debtors' use of Prepetition Collateral (including Cash Collateral), the continued orderly operation of the Debtors' healthcare services would not be possible, and serious and irreparable harm to the Debtors and their estates as well as their patients dependent on the Debtors' healthcare services would result. The purpose of the DIP Loan and the Debtors' use of Prepetition Collateral (including Cash Collateral) will thus be to preserve, maintain and possibly enhance the going concern value of the Debtors and protect patients dependent on the Debtors' services.

F.      No Credit Available on More Favorable Terms.  Given the Debtors' financial condition, financing arrangements, and capital structure, as well as the uncertain timing of collections of receivables, the Debtors do not have sufficient Cash Collateral to fund their businesses and are otherwise unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. Financing on a postpetition basis is not otherwise available without the Debtors' granting, pursuant to section 364(c)(1) of the Bankruptcy Code, claims having priority over any and all administrative expenses of the kinds specified in sections 503(b) and 507(b) of the Bankruptcy Code, and securing such indebtedness and obligations with the security interests in and the liens upon the DIP Collateral pursuant to section 364(c) and (d) of the Bankruptcy Code. The Debtors are unable to obtain the necessary postpetition financing that they need on terms more favorable than those provided by

the DIP Loan.

G.    *Need to Grant Superpriority Administrative Expense Claim and Senior Priming Liens.*  The Debtors are unable to obtain an adequate unsecured credit facility allowable under section 503(b)(1) of the Bankruptcy Code and must grant to the DIP Lender and Agent a Superpriority Administrative Expense Claim as contemplated by section 364(c)(2), (c)(3) and (d) of the Bankruptcy Code.  Subject only to the Carveout (as defined below) the DIP Lender has conditioned all loans and advances to be made under the DIP Term Sheet upon the grant to the DIP Lender and Agent of: (a) a Superpriority Administrative Expense Claim pursuant to section 364(c)(1) of the Bankruptcy Code with priority over any and all expenses of any kind or nature whatsoever specified in sections 503(b) and 507(b) of the Bankruptcy Code, including, without limitation, the Junior Superpriority Administrative Expense Claims; and (b) in accordance with section 364(c)(2), (c)(3) and (d) of the Bankruptcy Code, the Senior Priming Liens on and security interests in the DIP Collateral.

H.    *DIP Loan.*  Pursuant to the DIP Loan, the DIP Lender has agreed to provide a term loan to the Debtors in amounts not to exceed the maximum outstanding principal amount of: (i) following entry of the Interim Order and prior to entry of the Final Order, $7.4 million in accordance with the DIP Term Sheet, the Approved Budget (as defined below) and this Interim Order; and (ii) upon entry of the Final Order, the balance of the DIP Loan, in accordance with the DIP Loan Agreement, the DIP Loan Documents, the Approved Budget and the Final Order, for an aggregate commitment not to exceed $15 million (the "**Commitment**").  The DIP Lender and Agent shall have the discretion to establish a reserve in the Commitment in accordance with the DIP Term Sheet and the DIP Credit Agreement, including on account of the Carveout.

I.    *Business Judgment and Good Faith.*  The terms of the DIP Loan including the

interest rates and fees applicable thereto, are at least as favorable to the Debtors as those available from alternative sources. The terms of the DIP Loan have been negotiated in good faith and at arms' length between the Debtors and the DIP Lender, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are fair and reasonable under the circumstances, and are enforceable in accordance with applicable law. The credit extended to the Debtors by the DIP Lender under the DIP Loan and this Interim Order shall be deemed to have been extended in "good faith" as that term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections set forth therein, and shall be entitled to the full protection of sections 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

J.      *Need for Immediate Approval.*  The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2). Absent granting the relief sought by this Interim Order, the Debtors' estates will be immediately and irreparably harmed. The Debtors have no alternative source of financing to meet their immediate and projected obligations, including payroll and other operating expenses, and consequently, it is essential that the Court approve the interim financing contemplated hereby on an immediate basis. Consummation of the DIP Loan and authorization of the use of the Prepetition Collateral (including Cash Collateral) in accordance with the terms of this Interim Order are therefore in the best interests of the Debtors' estates, and are consistent with the Debtors' exercise of their fiduciary duties.

K.      *Record.*  The record adequately demonstrates the need for the Court to have conducted the Interim Hearing on the notice provided because of the potential for immediate and irreparable harm to the Debtors, their assets, businesses and estates. Based on the record,

pursuant to sections 105, 363, and 364 of the Bankruptcy Code and Bankruptcy Rules 4001(c),

notice of the Interim Hearing was adequate as set forth herein and on the record.

Based upon the foregoing, **IT IS HEREBY ORDERED, ADJUDGED AND
DECREED** as follows:

<b>Approval and Authorization.</b>

1.      *Motion Granted.*  The Motion is granted on an interim basis and on the terms set

forth herein.  Any objections to the Motion with respect to the entry of this Interim Order that

have not previously been withdrawn or resolved are hereby denied and overruled.

2.      *Approval of Documents.* The DIP Loan and the DIP Term Sheet are hereby

approved subject to the terms of this Interim Order including the Interim Disbursement. The

failure to reference or discuss any particular provision of the DIP Term Sheet shall not affect the

validity or enforceability of any such provision. In addition, the Debtor shall comply with the

following requirements:

(a)      The Debtors will provide a list of section 503(b)(9) claims and amounts to
counsel for the Committee on or before June 2, 2014 at 5:30 p.m. The Debtors are authorized to
make payments on account of section 503(b)(9) claims prior to June 4, 2014 only to the extent
the Debtors determine that such payment is necessary to ensure continued provision of goods.
From and after June 4, 2014, the Debtors may make payments on account of 503(b)(9) claims
pursuant to the Approved Budget (defined below).

(b)      No professional fees will be disbursed pursuant to this Interim Order
except upon a separate order of the Court, which shall retain the authority to reallocate among
professionals any amounts budgeted for professionals.  Notwithstanding the foregoing, the DIP
Lender shall continue to have the obligation to fund professional fees according to the Approved
Budget.

3.      *Authorization to Execute and Deliver Documents.*  The Debtors are expressly

authorized, empowered and directed to do and perform all acts to make, execute, deliver and

implement the DIP Term Sheet and any other document required to be executed and delivered in

connection therewith. Upon execution and delivery of the DIP Term Sheet, the DIP Loan

Obligations shall constitute valid, binding and nonavoidable obligations of the Debtors, enforceable against the Debtors in accordance with the terms of this Interim Order and the DIP Term Sheet.  No obligation, payment, transfer or grant of security under the DIP Term Sheet or this Interim Order shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable nonbankruptcy law (including without limitation, under sections 502(d), 548 or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim. The Debtors are authorized and directed to pay all principal, interest, fees, costs and other expenses that may be required or necessary for the Debtors to perform all of their obligations under the DIP Term Sheet and this Interim Order without any further order or approval of the Court.

4.      *Authorization to Borrow; the Approved Budget*. Good and sufficient cause has been shown for the entry of this Interim Order. The Debtors are authorized and empowered to borrow funds pursuant to the DIP Term Sheet up to the Interim Disbursement pending the Final Hearing for the purposes permitted under the DIP Term Sheet and this Interim Order, all in accordance with the budget attached to this Interim Order as **Exhibit 1** (the "**Approved Budget**").

5.      *Amendments*. The DIP Lender or Agent and the Debtors may amend, modify, supplement or waive any provision of the DIP Term Sheet if such amendment, modification, supplement or waiver is not material (in the good faith judgment of the DIP Lender or Agent and the Debtors), without any need to apply to, or receive further approval from, the Court.  Any material amendment, modification, supplement or waiver shall be in writing, signed by the parties and subject to approval by the Court on appropriate notice.

## Use of Prepetition Collateral (Including Cash Collateral).

6.       *Use of Prepetition Collateral (Including Cash Collateral)*. The Debtors are authorized to use the Prepetition Collateral (including the Cash Collateral) during the period from the Filing Date until the occurrence and continuation of an Event of Default for the same purposes as set forth in and in accordance with this Interim Order, the Motion and the Approved Budget.

## Payment of DIP Loan Obligations.

7.       *Payment of Principal, Interest, Fees, Etc*. The Debtors shall pay to the DIP Lender principal and interest as provided in this Interim Order and the DIP Term Sheet in accordance with the procedures herein and therein set forth (and the DIP Lender shall be permitted to charge such amounts to the DIP Loan Obligations).  In consideration of the financial and other accommodations to be made by the DIP Lender under this Interim Order and the DIP Term Sheet, the Debtors are hereby authorized and directed, without further order of the Court, to pay to the DIP Lender and Agent all fees and charges as set forth herein and in the DIP Term Sheet and to reimburse the DIP Lender and Agent for all reasonable out-of-pocket expenses and professional fees as set forth herein and in the DIP Term Sheet.

## Senior Superpriority Administrative Claim; Collateral.

8.       *Superpriority Administrative Expense Claim; Waiver under Section 506(c)*. Subject only to the Carveout, all of the DIP Loan Obligations shall have the status of an allowed Superpriority Administrative Expense Claim in the Case pursuant to section 364(c)(1) of the Bankruptcy Code, having priority over any and all administrative expenses, adequate protection claims and all other claims against the Debtors, whether heretofore or hereafter incurred, of any kind or nature whatsoever, including without limitation, all administrative expenses of the kind

specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code, including, without limitation, the Junior Superpriority Administrative Expense Claims and Adequate Protection Liens, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code (collectively, the "**Senior Superpriority Administrative Expense Claims**"). No claim or expense having a priority senior or *pari passu* to the priority granted to the DIP Lender and Agent in this Interim Order shall be granted or permitted in the Cases, or any superseding chapter 7 case, and no other costs or expenses of administration of any kind, nature or description whatsoever shall be imposed against the DIP Collateral under sections 105, 506(c) or 552 of the Bankruptcy Code or otherwise, in each case, while any portion of the DIP Loan Obligations remains outstanding.

9.      *Payment of Administrative Expenses*. Unless an Event of Default shall have occurred (or would result from such payment), subject to the Approved Budget, the Debtors shall be permitted to pay, as the same may become due or authorized and payable, administrative expenses of the kind specified in section 503(b) of the Bankruptcy Code incurred in the ordinary course of their businesses.

10.      *Senior Priming Liens*. As security for the full and timely payment of the DIP Loan Obligations, the DIP Lender and Agent are hereby granted pursuant to section 364(c)(2), (3) and (d) of the Bankruptcy Code, senior, perfected priming liens on, and security interests in, all of the DIP Collateral (the "**Senior Priming Liens**"), subject only to the Carveout.  The Senior

Priming Liens shall be senior in priority to security interests and liens securing the indebtedness and other obligations owing under any of the Borrowers' prepetition loan and security agreements and other liens, including any liens of the Existing Lienholders, and to the Adequate Protection Liens, but shall not be senior to any duly perfected real property tax liens, if any. The Senior Priming Liens shall not be subject to challenge, but instead shall attach and become valid and perfected without the requirement of any further action by the Agent or the DIP Lender.

11.     *No Subordination*. The liens on, and security interests in, the DIP Collateral granted to the DIP Lender and Agent under this Interim Order and pursuant to the DIP Loan Agreement and the DIP Loan Documents shall not be subordinated to, or made *pari passu* with, any other lien or security interest, however and whenever arising, in the Cases or any superseding chapter 7 case, other than the Carveout.

12.     *Automatic Perfection of Liens*.

(a) The liens and security interests granted to the DIP Lender and Agent hereunder and under the DIP Term Sheet are valid, binding, continuing, enforceable and fully-perfected with the priorities herein and therein set forth.

(b) The DIP Lender and Agent shall not be required to file any financing statements, mortgages, notices of lien or similar instruments in any jurisdiction or filing office, or to take any other action in order to validate or perfect the liens and security interests granted by or pursuant to this Interim Order and/or the DIP Term Sheet.

(c) Should the DIP Lender or Agent, in their sole discretion, from time to time, choose to file such financing statements, mortgages, notices of lien or similar instruments, take possession of any DIP Collateral securing the DIP Loan Obligations for perfection purposes, or take any other action to protect from infringement or otherwise validate or perfect any such security interest or lien, the Debtors and their officers are hereby directed to execute any such documents or instruments as the DIP Lender or Agent shall reasonably request, and all such documents and instruments shall be deemed to have been filed or recorded at the time and on the date of entry of this Interim Order.

(d) In the discretion of the DIP Lender or Agent, a certified copy of this Interim Order may be filed with or recorded in filing or recording offices in addition to or

- 13 -

in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby directed to accept such certified copy of this Interim Order for filing and recording, and such certified copy shall be deemed filed and recorded at the time and on the date of entry of this Interim Order.

### Carveout.

13.     *Carveout*.   The liens, security interests, and Superpriority Administrative Expense Claims (as defined below) granted in favor of the Lender and the Agent in connection with the DIP Loan shall be subject to a carveout (the "**Carveout**") for (i) the payment of U.S. Trustee fees, (ii) the payment of all court-approved fees and expenses of professionals retained by the Borrowers, professionals retained by the official committee of unsecured creditors (the "**Committee**"), and the patient care ombudsman appointed in the Cases (collectively, the "**Professional Fees**") incurred during the Cases in accordance with the Approved Budget prior to the occurrence of an Event of Default (as defined below) under the DIP Loan, but that remain unpaid as of such date, in an amount not to exceed the aggregate amount set forth in the Approved Budget (without regard to any permitted variance under the Approved Budget) for the time period up to the date of an Event of Default and (iii) an amount up to $250,000 for the payment of Professional Fees incurred from and after the occurrence of an Event of Default under the DIP Loan following entry of the Final Order.   Other than the Carveout, the DIP Loan shall not otherwise be subject to any carveout for Professional Fees.

### Termination.

14.     *Termination*. Notwithstanding the provisions of section 362 of the Bankruptcy Code and without order of or application or motion to the Court, subject to any applicable grace or cure period expressly set forth in the DIP Term Sheet, in the event of: (a) the failure of the Debtors to perform any of their material obligations under this Interim Order, or (b) the

occurrence and continuance of an Event of Default (as defined in the DIP Term Sheet), then and upon the occurrence of either of the foregoing (each an "**Event of Default**"), and at all times during the continuance thereof, the DIP Lender or Agent may upon not less than five (5) days prior written notice to the Debtors and their counsel, the Office of the United States Trustee, and counsel for the Committee, exercise any and all rights and remedies allowed under this Interim Order, the DIP Term Sheet and/or applicable law; *provided, however,* that notwithstanding the foregoing and section 362 of the Bankruptcy Code, and without order of or application or motion to the Court, if an Event of Default exists which is not subsequently cured or waived during the notice period: (i) The DIP Loan shall mature and any and all DIP Loan Obligations shall become due and payable in full in cash, (ii) The Agent and the DIP Lender shall have standing to move for an order to cause the Borrowers to engage in a process to liquidate their assets pursuant to Bankruptcy Code § 363, and (iii) The Agent and the DIP Lender shall have the right to an emergency hearing requesting relief from the automatic stay otherwise imposed pursuant to Bankruptcy Code Section 362 that permits the Agent and the DIP Lender to realize upon, or to exercise any right or remedy with respect to, any portion of the DIP Collateral. The DIP Lender's failure to exercise rights under this paragraph shall not constitute a waiver of any of their rights. At any hearing following an Event of Default, the Debtors shall be permitted to contest whether an Event of Default has occurred and is then continuing but may not seek any relief that would in any way restrict or impair the rights and remedies of the DIP Lender set forth in this Interim Order, the DIP Term Sheet and/or applicable law.

15.     *Due Date.* In addition to any rights and remedies of the DIP Lender and Agent under the terms of this Interim Order, the DIP Loan shall immediately and automatically terminate and the DIP Loan Obligations shall be immediately due and payable upon the Due

Date (as defined in the DIP Term Sheet).

## Adequate Protection for the Existing Lienholders.

16.      *Adequate Protection Liens*. As adequate protection for the granting of the Senior

Priming Liens to secure the DIP Loan and the Debtors' use of the Prepetition Collateral

including the Cash Collateral, to the extent of any diminution in value (if any) of the Existing

Lienholders' liens (if any) in the Prepetition Collateral following the Petition Date, the Existing

Lienholders are granted replacement liens (the "**Adequate Protection Liens**"), in the same

priorities that exist prior to the entry of this Order, with respect to the same Debtors, and in the

same collateral type that currently secures their respective claims, whether such collateral arose

before or after the entry of the orders for relief with respect to each of the Debtors.   The

Adequate Protection Liens shall be subject to the Carveout and shall be junior in priority to the

Senior Priming Liens granted to the DIP Lender and Agent securing the DIP Loan Obligations

and senior to all other liens.   As additional adequate protection for the United States, the Debtors

shall: (1) provide CMS with weekly census reports for LTACs; and (2) pay all current post-

petition federal tax obligations when due.

17.      *No Filing Required*. The Existing Lienholders shall not be required to file any

financing statements, mortgages, notices of lien or similar instruments in any jurisdiction or

filing office, or to take any other action in order to validate or perfect the Adequate Protection

Liens granted by or pursuant to this Interim Order. The Existing Lienholders shall have no right

to seek or exercise any rights or remedies in respect of the Adequate Protection Liens unless the

DIP Lender has consented thereto or the DIP Loan Obligations has been indefeasibly paid and

satisfied in full accordance with the DIP Term Sheet and this Interim Order.

18.      *Superpriority Administrative Expense Claim; Waiver under Section 506(c)*. In

accordance with section 507(b) of the Bankruptcy Code, the amount of any diminution in value (if any) of the Existing Lienholders liens in the Prepetition Collateral following the Petition Date shall have the status of an allowed Superpriority Administrative Expense Claim in the Cases pursuant to section 364(c)(1) of the Bankruptcy Code, having priority over any and all administrative expenses, adequate protection claims and all other claims against the Debtors, whether heretofore or hereafter incurred, of any kind or nature whatsoever, including without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c)(subject to entry of the Final Order), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, subject and junior only to the DIP Lender's and Agent's Senior Superpriority Administrative Expense Claim and the Carveout (the "**Junior Superpriority Administrative Expense Claim**"). No claim or expense having a priority senior or *pari passu* to the priority granted to the Existing Lienholders, except for those superpriority claims and liens granted to the DIP Lender and Agent in this Interim Order, shall be granted or permitted in the Cases, or any superseding chapter 7 case, and, subject to entry of the Final Order, no other costs or expenses of administration of any kind, nature or description whatsoever shall be imposed against the Existing Lienholders' collateral under sections 105, 506(c) or 552 of the Bankruptcy Code or otherwise (subject to entry of the Final Order), in each case, while any portion of the Prepetition Secured Obligations remains outstanding.

### **Miscellaneous Provisions.**

19.  *Reporting Requirements*. The Debtors are obligated to comply with the reporting and disclosure undertakings and agreements set forth in this Interim Order and the DIP Term Sheet and such obligations shall continue until the indefeasible payment in full of all DIP Loan Obligations and the DIP Lender's commitment to loan money to the Debtors under the DIP Loan Agreement is terminated.  The Debtors shall provide to Committee counsel copies of reports sent by the Debtors to the DIP Lender pursuant to this Paragraph 19.

20.  *United States' Rights.*  Notwithstanding anything to the contrary in the Motion, this Interim Order or the DIP Term Sheet, the United States' right to adjust payments to the Debtors for provision of Medicare services, including without limitation the United States' right to offset any debt owed to the United States or recoup previously made overpayments, is in no way limited, affected or restrained, and may be exercised pursuant to applicable law, including without limitation, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk; provided, however, that the United States will not exercise any set off rights without Court authority, after notice and a hearing to all interested parties.

21.  *Escrow Account for Payroll Taxes*.  The Debtors shall establish an escrow account in the name of the Debtors for purposes of prepaying payroll taxes every two weeks (the "**Payroll Escrow Account**"), which account shall be used for no other purpose than prepaying payroll taxes.  Every two weeks, the Debtors shall deposit into the Payroll Escrow Account, the payroll taxes for the two-week period commencing on the next business day.

22.  *Binding Effect of Order; Successors and Assigns*. The DIP Term Sheet and this Interim Order shall be binding upon all parties-in-interests in the Cases, including without limitation, the DIP Lender, the Existing Lienholders, the Committee and the Debtors and their respective successors and assigns, including, without limitation, any chapter 11 trustee or chapter

7 trustee or similar responsible person hereafter appointed as a representative of the Debtors' estates and any such successors or assigns, without further order of this Court and shall inure to the benefit of the DIP Lender, the Existing Lienholders, the Committee and the Debtors and their respective successors and assigns. The Debtors and their successors and assigns shall be deemed authorized and directed to comply with the provisions of this Interim Order and the DIP Term Sheet. The DIP Lender shall not have any obligation to extend any financing to any chapter 11 trustee or chapter 7 trustee or similar responsible person appointed for the estates of the Debtors.

23.    *No Impairment of Liens and Order*. The liens, security interests, Senior Superpriority Administrative Expense Claims, DIP Loan Obligations and other rights and remedies granted to the DIP Lender and Agent under this Interim Order and the DIP Term Sheet, and any actions taken pursuant hereto or thereto shall survive, and shall not be modified, altered or impaired in any manner by: (a) any other financing or extension of credit or incurrence of debt by the Debtors (under section 364 of the Bankruptcy Code or otherwise); (b) the entry of an order confirming any plan of reorganization; (c) the entry of an order converting the Case to chapter 7 or dismissing the Cases; or (d) the maturity of the DIP Loan Obligations. The liens, security interests, claims and any other rights granted to the DIP Lender and Agent pursuant to this Interim Order and the DIP Term Sheet shall continue in effect until the DIP Loan Obligations are indefeasibly satisfied and paid, and the DIP Lender's commitment to make loans under the DIP Loan has terminated.

24.    *Good Faith*. Having been found to be extending the DIP Loan to the Debtors in good faith, the DIP Lender and the Agent are entitled to the full protection of section 364(e) of the Bankruptcy Code with respect to the DIP Loan Obligations and the Senior Superpriority Administrative Expense Claims and liens created or authorized by this Interim Order in the event

that this Interim Order or any authorization contained herein is stayed, vacated, reversed or modified on appeal. If any provision of this Interim Order is hereafter modified, vacated, reversed or stayed by subsequent order of this or any other court for any reason, such modification, vacation, reversal or stay shall not affect the validity, enforceability and priority of any of the DIP Loan Obligations or the claims, liens and security interests granted to the DIP Lender and the Agent under this Interim Order and/or the DIP Term Sheet, and the validity, enforceability or priority of the DIP Loan Obligations and the claims, liens and security interests of the DIP Lender and the Agent shall be governed in all respects by the original provisions of this Interim Order, and the DIP Lender and the Agent shall be entitled to all of the rights, privileges and benefits granted herein, including, without limitation, the liens, security interests and priorities granted to the DIP Lender and the Agent in this Interim Order with respect to all DIP Loan Obligations.

25.    *Challenges in Respect of DIP Loan Obligations*. None of the advances under the DIP Loan or the Carveout may be used to prosecute actions, claims, demands or causes of action against the DIP Lender or the Agent or to object to or contest in any manner, or to raise any defense in any pleading to the validity, perfection, priority or enforceability of the DIP Loan Obligations, the Senior Superpriority Administrative Claims or the Senior Priming Liens.

26.    *No Third Party Beneficiaries*. Other than as expressly set forth herein, no rights are created hereunder for the benefit of any third party, or any direct, indirect or incidental beneficiary.

27.    *No Marshaling*. In no event shall the DIP Lender or Agent be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral.

28.    *Limitations under Section 552(b) of the Bankruptcy Code*. Subject to entry of the

Final Order, the DIP Lender and the Agent shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and no expenses of administration of the Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, may be charged against proceeds, product, offspring or profits from any of the DIP Collateral under section 552(b) of the Bankruptcy Code.

29.     *No Waiver*. Any delay or failure to exercise rights and remedies under the DIP Term Sheet or this Interim Order of the DIP Lender or Agent shall not constitute a waiver of such party's rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the DIP Term Sheet and this Interim Order.

30.     *Payments Free and Clear*. Any and all payments or proceeds remitted to the DIP Lender, the Agent or Existing Lienholders pursuant to the provisions of this Interim Order or any subsequent order of this Court shall be received free and clear of any claim, charge, assessment or other liability, including without limitation, any such claim or charge arising out of or based on, directly or indirectly, sections 506(c) (whether asserted or assessed by, through or on behalf of the Debtors) or 552(b) of the Bankruptcy Code (subject to entry of the Final Order).

31.     *Insurance*. The DIP Lender and the Agent are deemed to be the loss payee under the Debtors' insurance policies and shall act in that capacity and distribute any proceeds recovered or received in respect of any such insurance policies to the payment in full of the DIP Loan Obligations, except to the extent such insurance policy covers, or results in recovery therefrom relating to any cause of action against any director or officer of the Debtors.

32.     *Automatic Stay*. The automatic stay imposed by virtue of section 362 of the Bankruptcy Code is hereby vacated and modified insofar as necessary to permit the DIP Lender

- 21 -

and the Agent to take any action authorized or contemplated by this Interim Order or the DIP Term Sheet and to carry out the terms thereof, subject, however, to the satisfaction of any notice, procedural and other conditions contained in this Interim Order, and/or the DIP Term Sheet.

33.    *No Control*. Subject to entry of the Final Order, by consenting to this Interim Order, by making advances, loans or extending financial accommodations of any type, kind or nature under this Interim Order or by administering the loans made hereunder, none of the DIP Lender or the Agent shall be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person," "managing agent" or "owner or operator" (as such terms or any similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any similar Federal or state statute) with respect to the operation or management of the Debtors.

34.    *Indemnification*. Subject to the entry of the Final Order, nothing in this Interim Order or the DIP Term Sheet shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender or the Agent, any liability for any claims arising from the prepetition or postpetition activities of the Debtors in the operation of their businesses, or in connection with their restructuring efforts. So long as the DIP Lender and the Agent comply with their respective obligations under this Interim Order and the DIP Term Sheet and their obligations under applicable law (including the Bankruptcy Code): (a) the DIP Lender and the Agent shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof, or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person; and (b) all risk of loss, damage or destruction of the Collateral shall be borne by the Debtors.

35.    *Inconsistency*. In the event of any inconsistency between this Interim Order and the DIP Term Sheet, any document or any other agreement heretofore or hereafter entered into by and between the Debtors and the DIP Lender Parties and/or the Existing Lienholders, the terms of this Interim Order shall govern and control.

36.    *Retention of Jurisdiction*. The Bankruptcy Court shall retain jurisdiction to enforce the provisions of this Interim Order, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for the Debtors notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

37.    *Immediate Docketing of Order*. The Clerk of the Court is hereby directed to forthwith enter this Interim Order on the docket of this Court maintained in regard to the Cases.

38.    *Effectiveness*. In accordance with Rule 7052, this Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable immediately upon entry hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

39.    *Headings*. Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

40.    *Notice of Final Hearing; Objections*. The Debtors shall, on or before **June 6, 2014** transmit copies of a notice of the entry of this Interim Order, together with a copy of this Interim Order and a copy of the Motion, to the parties having been given notice of the Interim

Hearing, to any party which has filed prior to such date a request for notices with this Court and

to counsel for the Committee.  The notice of entry of this Interim Order shall state that any party

in interest objecting to the DIP Loan on a final basis and the entry of the Final Order shall file

written objections with the Clerk of the United States Bankruptcy Court for the District of

Columbia no later than **2:00 p.m. (prevailing Eastern Time) on June 16, 2014** and shall serve

such objections so that the same are received on or before such date by: (a) counsel to the

Debtors, Pillsbury Winthrop Shaw Pittman, LLP, 2300 N Street, NW, Washington, DC 20037-

1122 (Attn: Patrick Potter, patrick.potter@pillsburylaw.com) and Pillsbury Winthrop Shaw

Pittman, LLP, 1540 Broadway, New York, NY (Attn: Andrew Troop,

andrew.troop@pillsburylaw.com); (b) (ii) counsel for the DIP Lender and holder of the BB&T

Debt for noticing purposes, Squire Patton Boggs (US) LLP, One East Washington Street, Suite

2700, Phoenix, AZ 85004 (Attn: Craig D. Hansen, Esq., craig.hansen@squirepbs.com); (c)

counsel to the Committee, Wiley Rein LLP, 1776 K Street, NW, Washington, DC 2006 (Attn:

Valerie P. Morrison, vmorrison@wileyrein.com; Dylan Trache, dtrache@wileyrein.com); and

(d) the Office of the United States Trustee for the District of Columbia, 115 S. Union Street,

Room 210, Alexandria, VA 22314 (Attn: Bradley Jones; Bradley.D.Jones@usdoj.gov).

41.    *Final Hearing*. The Final Hearing will be held on **June 18, 2014 at 10:30 a.m.
(prevailing Eastern Time)**.

SIGNED AND DATED ABOVE

cc:

All attorneys who have entered an appearance and who are registered e-filers.

## <u>Exhibit 1</u>