The order below is hereby signed.

Signed: June 2 2014



*S. Martin Teel Jr.*

S. Martin Teel, Jr.
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

In re:

SPECIALTY HOSPITAL OF
WASHINGTON, LLC, *et al.*,

Debtors.[1]

Case No. 14-00279

Chapter 11

(Jointly Administered with Chapter 11
Case Nos. 14-00295 – 14-00300)

**ORDER (I) APPROVING AUCTION AND BIDDING PROCEDURES
IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THE
DEBTORS' ASSETS, (II) AUTHORIZING ENTRY INTO A STALKING
HORSE AGREEMENT, SUBJECT TO HIGHER OR OTHERWISE BETTER
OFFERS AND OBJECTIONS TO THE SALE OR ASSUMPTION AND ASSIGNMENT
OF DESIGNATED CONTRACTS, (III) APPROVING PROCEDURES RELATED TO
THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND
UNEXPIRED LEASES, (IV) SCHEDULING AUCTION AND SALE HEARING, (V)
APPROVING THE FORM AND MANNER OF SALE NOTICE, AND
(VI) GRANTING RELATED RELIEF**

Upon the Debtors' motion for, among other things, entry of an Order (i) Approving

Auction and Bidding Procedures for the Sale of Substantially All of the Debtors' Assets, (ii)

---

[1]     The debtors in these chapter 11 cases and each debtor's federal identification number ("**EIN**") and chapter 11 case number are:  Specialty Hospital of Washington, LLC (EIN: 81-0681352; Case No. 14-00279), Specialty Hospital of America, LLC (EIN: 81-0681347; Case No. 14-00295), SHA Holdings, Inc. (EIN: 20-5741943; Case No. 14-00296), SHA Management, LLC (EIN: 81-0681350; Case No. 14-00297), Specialty Hospital of Washington Nursing Center, LLC (EIN: 81-0681348; Case No. 14-00298), Specialty Hospital of Washington Hadley, LLC (EIN: 20-5752586; Case No. 14-00299), and SHA Hadley SNF, LLC (EIN: 20-5741976; Case No. 14-00300).

Authorizing Entry Into a Stalking Horse Agreement, Subject to Higher or Otherwise Better

Offers, (iii) Approving Procedures for the Assumption and Assignment of Executory Contracts

and Unexpired Leases, (iv) Scheduling the Auction and Sale Hearing; (v) Approving the Form

and Manner of the Sale Notice, and (vi) Granting Related Relief (the "**Motion**"),[2] all as more

fully set forth in the Motion (Doc. 68), and as modified in Document 111 and on the record at the

May 30, 2014 hearing on the Motion (the "**Hearing**"); and the Court having jurisdiction over this

matter pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief

requested therein being a core proceeding pursuant to 28 U.S.C. §157(b)(2); and venue being

proper before this Court pursuant to 28 U.S.C. §§1408 and 1409, and due and proper notice of

the Motion having been provided to the necessary parties; and it appearing that no other or

further notice need be provided; and the Hearing having been held to consider the relief

requested in the Motion; and the appearances of all interested parties having been noted in the

---

[2]     The Motion also seeks entry of an order approving and authorizing the Debtors to sell the Acquired Assets free and clear of claims, liens and other interests, and related relief.  Those aspects of the Motion, including but not limited the terms and conditions of the Stalking Horse Agreement are not addressed in this Order, and instead, will be addressed at the Sale Hearing. All capitalized terms used but not otherwise defined on this Order shall have the meanings ascribed to them in the Motion, with the exception of the definition of the Total Transaction Value, which is amended to read as follows:  The purchase price (the "**Purchase Price**") for the purchase, sale, assignment and conveyance of the Debtors' right, title and interest in, to and under the Acquired Assets (as defined below), free and clear of all interests, claims, liens and encumbrances pursuant to section 363(f) of the Bankruptcy Code, shall consist of: (a) a $15 million DIP loan term facility, with all sums owing thereon to be credit-bid by the Purchaser at closing pursuant to Bankruptcy Code Section 363(k); plus (b) the assumption by the Stalking Horse Purchaser of certain liabilities set forth in the Stalking Horse Agreement, including the Regulatory Agreements, and the payment of the Cure Costs (as defined below) relating to the Designated Contracts; plus (c) an amount not to exceed $200,000 (or as otherwise approved by the Stalking Horse Purchaser in its sole discretion), to conduct the orderly wind-down or dismissal of the bankruptcy case(s) following the sale contemplated by the Transaction; and plus (d) in the sole discretion of SHP, an amount up to $10,000,000 of the BB&T Debt, which has been purchased by and assigned to SHP.  SHP reserves the right to credit bid up to the face amount of the BB&T Debt, including without limitation BB&T's first priority lien on the Owned Real Property, and the parties reserve the right to object to any such credit bid.

record of the Hearing; and upon the record of the Hearing; and the Court having determined that the procedural relief sought in the Motion is in the best interests of the Debtors, their creditors, and all parties in interest; and the Court having determined that the Debtors have demonstrated a compelling and sound business justification for the relief requested in the Motion, and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefore, it is hereby:

**FOUND AND DETERMINED THAT**

A.     The Debtors have demonstrated a compelling and sound business justification for this Court to grant the relief requested in the Motion to the extent provided herein, including, without limitation, (i) approval of the Bidding Procedures attached hereto as **Exhibit 1**, (ii) approval of the Breakup Fee and Expense Reimbursement, as provided in the Bidding Procedures, and (iii) approval of the Assignment and Assumption Procedures, under the circumstances described herein and the Motion.

B.     The Bidding Procedures (incorporated herein by reference as if fully set forth in this Order), are fair, reasonable and appropriate and represent the best method for preserving the Debtor's operations and auctioning its assets.

C.     Approving the Transaction Value, as modified (with all rights reserved as to executory contract cures), is in the best interests of the Debtors' estates and creditors and will provide a benefit to the Debtors' estates and creditors, among others, by establishing a floor for the value of the Debtors' going concern business.

D.     The Breakup Fee and Expense Reimbursement are fair, reasonable and appropriate and provide a benefit to the Debtors' estates and creditors.

E.    The Initial Overbid and the Overbid Increments are fair, reasonable and appropriate and provide a benefit to the Debtors' estates and creditors.

F.    The Sale Notice, attached hereto as **Exhibit 2**, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the sale of the Acquired Assets, the Bidding Procedures, the Auction and the Sale Hearing, and no other or further such notice is required.

G.    The Cure Notice, attached hereto as **Exhibit 3**, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the potential assumption and assignment of the Designated Contracts in connection with the sale of the Acquired Assets and the related Cure Amount, and no other or further such notice is required.

**IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED THAT**

1.    The Motion is GRANTED to the extent of the relief specifically granted herein.

2.    The Bidding Procedures attached hereto as **Exhibit 1**, including those related to payment of the Breakup Fee and Expense Reimbursement, are hereby approved, are incorporated herein by reference, and shall govern all bids and bid procedures relating to the Auction and Sale of the Acquired Assets. The Debtors are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.

3.    The Debtors are authorized to enter into the Stalking Horse Agreement with the Stalking Horse Purchaser, subject to higher or otherwise better offers and any objections to the sale or the assumption and assignment of Designated Contracts that may be filed.

4.    The Breakup Fee and Expense Reimbursement are hereby approved and allowed as an administrative expense of the Debtors and the Debtors' estates under section 503

4

of the Bankruptcy Code. In the event that payment of the Breakup Fee and Expense Reimbursement is triggered, under the terms of the Stalking Horse Agreement or otherwise, the Breakup Fee and Expense Reimbursement shall be paid (i) in the event of the Sale of all or any part of the Acquired Assets to any party other than the Stalking Horse Purchaser, from the proceeds of such Sale, and at the earlier of the closing of such Sale, or within 10 days of entry of an order approving such Sale; or (ii) in the case of any other event triggering payment of the Breakup Fee and Expense Reimbursement, from amounts advanced to the Debtors under the DIP Loan.

5.      The Sale Notice attached hereto as **Exhibit 2** is hereby approved.

6.      The deadline for submitting a Qualified Bid in accordance with the Bidding Procedures shall be **June 20, 2014 at 5:00 p.m. (prevailing Eastern Time)** (the "**Bid Deadline**").

7.      Subject to the provisions of the Bidding Procedures, the Debtors are authorized to solicit, initiate, encourage, facilitate or take any other action designed to facilitate any inquiries or proposals regarding any sale of assets, assumption of liabilities or similar transactions with third parties until the Bid Deadline.

8.      Unless the Debtors receive an additional Qualified Bid, they will not hold an Auction, and the Stalking Horse Purchaser shall be named the Successful Bidder.

9.      If the Debtors receive an additional Qualified Bid (meaning at least one Qualified Bid in addition to the Stalking Horse Purchaser's existing Qualified Bid), the Debtors shall conduct the Auction on **June 23, 2014 at 10:00 a.m. (prevailing Eastern Time)** at the offices of Pillsbury Winthrop Shaw Pittman LLP, 2300 N Street, NW, Washington, DC 20037-

1122, or such later time or such other place as the Debtors shall designate in a subsequent notice to all Qualified Bidders.

10.     Only Qualified Bidders may participate in the Auction. Each such Qualified Bidder participating in the Auction may be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale.  The Auction will be videotaped and/or transcribed.

11.     All bidders at the Auction shall be deemed to have consented to the Bidding Procedures and to the core jurisdiction of this Court, waived any right to a jury trial in connection with any disputes relating to the Auction, the sale and the construction and enforcement of the applicable Asset Purchase Agreement, and, except as otherwise provided in this Order and the Bidding Procedures, waived any claim for expense reimbursement or a break-up fee.

12.     By June 6, 2014, the Debtors shall serve the Sale Notice, substantially in the form attached hereto as **Exhibit 2**, by first class mail on the following persons:

   i.     counsel to the Stalking Horse Purchaser;

   ii.    counsel to the Existing Lienholders;

   iii.   all applicable health regulatory agencies and taxing authorities;

   iv.    the Office of the United States Trustee for the District of Columbia;

   v.     the United States Attorney's Office for the District of Columbia;

   vi.    any entity known or reasonably believed to have asserted a security interest in or lien against any of the Acquired Assets;

   vii.   counsel for the Committee;

   viii.  any party that has filed a notice of appearance in these cases;

   ix.    any party who has, within the last twelve months, expressed an interest to the Debtors in purchasing the Acquired Assets;

x.  any party who the Debtors or their professionals, in consultation with the Committee, believe would have an interest in purchasing the Acquired Assets.

13.  As soon as practicable following the determination of the Successful Bid, the Debtors shall file a notice with the Court identifying the Successful Bidder and serve such notice by telecopy, electronic mail transmission, or overnight delivery upon the following entities: (a) the Office of the United States Trustee for the District of Columbia; (b) counsel to the Committee; (c) counsel to the Stalking Horse Purchaser; (d) all applicable health regulatory agencies and taxing authorities; (e) the United States Attorney's Office for the District of Columbia; (f) all known parties that may be asserting a lien against the Acquired Assets; (g) all Qualified Bidders that have submitted a Qualified Bid; (h) all non-debtor counterparties to the Designated Contracts proposed to be assumed and assigned under the Successful Bid; and (i) all parties that have requested notice pursuant to Bankruptcy Rule 2002.

14.  The Assumption and Assignment Procedures are hereby approved.

15.  By June 6, 2012, the Debtors will file the Cure Notice, substantially in the form attached hereto as **Exhibit 3** (the "**Cure Notice**") with the Court and serve such Cure Notice by first-class mail on the non-debtor counterparties to the Designated Contracts. The Cure Notice substantially in the form attached hereto as **Exhibit 3** is hereby approved. The Debtors reserve the right to amend, modify, or supplement the Cure Notice.

16.  Any objection to the assumption and assignment of any Designated Contract identified on the Cure Notice, including, without limitation, any objection to the Cure Amount set forth on the Cure Notice or to the ability of the Successful Bidder to provide adequate assurance of future performance under such Designated Contract, must (a) be in writing, (b) set forth the basis for the objection as well as any cure amount that the objector asserts to be due (in all cases with appropriate documentation in support thereof), and (c) be filed

with the Clerk of the Court, United States Bankruptcy Court for the District of Columbia, 333 Constitution Avenue, NW, Room 1225, Washington, DC 20001, and served on the following: (i) counsel to the Debtors, Pillsbury Winthrop Shaw Pittman LLP, 2300 N Street, NW, Washington, DC 20037-1122 (Attn: Patrick Potter, patrick.potter@pillsburylaw.com) and Pillsbury Winthrop Shaw Pittman LLP, 1540 Broadway, New York, NY (Attn: Andrew Troop, andrew.troop@pillsburylaw.com); (ii) counsel for the Stalking Horse Purchaser for noticing purposes, Squire Patton Boggs LLP, One East Washington Street, Suite 2700, Phoenix, AZ 85004 (Attn: Craig D. Hansen, craig.hansen@squirepb.com; (iii) counsel to the Committee, Wiley Rein LLP, 1776 K Street, NW, Washington, DC 2006 (Attn: Valerie P. Morrison, vmorrison@wileyrein.com; Dylan Trache, dtrache@wileyrein.com); (iv) counsel to the Successful Bidder, if not the Stalking Horse Purchaser; and (v) the Office of the United States Trustee for the District of Columbia, 115 S. Union Street, Room 210, Alexandria, VA 22314 (Attn: Bradley Jones; Bradley.D.Jones@usdoj.gov), **so as to be <u>actually received</u> no later than 2:00 p.m. (prevailing Eastern Time) on June 24, 2014** (the "**Assignment and Cure Objection Deadline**").

17.     To the extent that any entity does not timely object as set forth above, such entity shall be (a) forever barred from objecting to the assumption and assignment of its respective Designated Contracts identified on the Cure Notice, including, without limitation, asserting any additional cure payments or requesting additional adequate assurance of future performance, (b) deemed to have consented to the applicable Cure Amount, if any, and to the assumption and assignment of the applicable Designated Contract, (c) bound to such corresponding Cure Amount, if any, (d) deemed to have agreed that the Successful Bidder has provided adequate assurance of future performance within the meaning of section 365(b)(1)(C)

of the Bankruptcy Code, (e) deemed to have agreed that all defaults under the applicable Designated Contract arising or continuing prior to the effective date of the assignment have been cured as a result or precondition of the assignment, such that the Successful Bidder or the Debtors shall have no liability or obligation with respect to any default occurring or continuing prior to the assignment, and from and after the date of the assignment the applicable Designated Contract shall remain in full force and effect for the benefit of the Successful Bidder and such entity in accordance with its terms, (f) deemed to have waived any right to terminate the applicable Designated Contract or designate an early termination date under the applicable Designated Contract as a result of any default that occurred and/or was continuing prior to the assignment date, (g) deemed to have agreed that the Debtors are not obligated under the Designated Contracts following the effective date of the assumption and assignment, and (h) deemed to have agreed that the terms of the Sale Order shall apply to the assumption and assignment of the applicable Designated Contract.

18.    If such an objection is received timely and such objection cannot otherwise be resolved by the parties, the Court may hear such objection at the Sale Hearing or at a later date set by the Court. The pendency of a dispute relating to the Cure Amount will not prevent or delay the assumption and assignment of any Designated Contract or the sale of the Acquired Assets to the Successful Bidder. If an objection is filed with respect only to the cure amount listed on the Cure Notice, the dispute with respect to the Cure Amount will be resolved consensually, if possible, or, if the parties are unable to resolve their dispute, before the Court, and subject to the entry of the Sale Order the Debtors may consummate the sale of the Acquired Assets and assumption and assignment of the Designated Contracts and reserve from the cash sale proceeds an amount sufficient to pay the asserted cure amount.

19.     The Sale Hearing shall be held on **June 25, 2014 at 10:30 a.m. (prevailing Eastern Time)** at the United States Bankruptcy Court for the District of Columbia, Courtroom No. 1, 333 Constitution Avenue, NW, Washington, DC 20001. The Sale Hearing may be adjourned or rescheduled without further notice by an announcement of the adjourned date at the Sale Hearing.

20.     All other objections to approval of the sale of the Acquired Assets to the Successful Bidder shall (a) be in writing, (b) comply with the Bankruptcy Rules and any applicable Local Rules, (c) set forth the name of the objector, (d) state with particularity the legal and factual bases for such objection, and (e) be filed with the Clerk of the Court, United States Bankruptcy Court for the District of Columbia, 333 Constitution Avenue, NW, Room 1225, Washington, DC 20001, together with proof of service thereof, and served on the following parties **so as to be <u>actually received</u> no later than 2:00 p.m. (prevailing Eastern Time) on June 24, 2014:** (i) counsel to the Debtors, Pillsbury Winthrop Shaw Pittman LLP, 2300 N Street, NW, Washington, DC 20037-1122 (Attn: Patrick Potter, patrick.potter@pillsburylaw.com) and Pillsbury Winthrop Shaw Pittman LLP, 1540 Broadway, New York, NY (Attn: Andrew Troop, andrew.troop@pillsburylaw.com); (ii) counsel for the Stalking Horse Purchaser for noticing purposes, Squire Patton Boggs LLP, One East Washington Street, Suite 2700, Phoenix, AZ 85004 (Attn: Craig D. Hansen, craig.hansen@squirepb.com; (iii) counsel to the Committee, Wiley Rein LLP, 1776 K Street, NW, Washington, DC 2006 (Attn: Valerie P. Morrison, vmorrison@wileyrein.com; Dylan Trache, dtrache@wileyrein.com); (iv) counsel to the Successful Bidder, if not the Stalking Horse Purchaser; and (v) the Office of the United States Trustee for the District of Columbia, 115 S. Union Street, Room 210, Alexandria, VA 22314 (Attn: Bradley Jones; Bradley.D.Jones@usdoj.gov).

21.     All objections to entry of this Order that have not been withdrawn, waived, or settled as announced to the Court at the Hearing or by stipulation filed with the Court, are overruled.

22.     All objections to the sale of the Acquired Assets are preserved for the Sale Hearing.

23.     <u>Provisions Relating to the Rights of the United States Government</u>. Notwithstanding anything to the contrary in this Order,

i.     The United States shall have an additional thirty (30) days from the Assignment and Cure Objection Deadline to respond to any Cure Notice.

ii.     The Debtors will not rely on the procedures set forth in the Bidding Procedures to effectuate the assumption and assignment of any provider agreements with, or provider numbers issued by, (collectively, "**Provider Agreements**") the Center for Medicaid and Medicare Services ("**CMS**"); and instead, if any Provider Agreements with CMS are to be transferred as part of the sale of the Acquired Assets, then any such Provider Agreements will be transferred pursuant and subject to the requirements of section 365 of the Bankruptcy Code, by motion, or if appropriate or applicable, by settlement agreement or stipulation.

iii.     Any assignment of Debtors' Medicare Provider Agreements must comply with the Medicare statute, regulations, policies and procedures. The Medicare Provider Agreements will not be assigned before Cure and adequate assurance of future performance is determined.

iv.     To transfer any Provider Agreements with CMS, an agreement among CMS, the Stalking Horse Purchaser and the Debtors, regarding the transfer of the Provider Agreements and limiting the buyer's potential liability for pre-sale obligations with respect to all Provider Agreements, will precede any transfer. In the absence of an agreement, the Debtors will not transfer any Provider Agreement in connection with the sale of the Acquired Assets.

v.     Prior to any closing and transfer of the Provider Agreements, CMS will continue to make payments to the Debtors, as the current providers, in accordance with applicable Medicare law.

24.     SHP and Debtor agree to promptly provide information to and meet with the Committee, as the Committee reasonably requests, regarding to the Debtors, the Approved Budget, Debtor's operations, the Sale, and the Auction including Designated Contracts.

25.     In the event there is a conflict between this Order and the Motion or Stalking Horse Agreement, to the extent of such conflict this Order shall control and govern.

26.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, enforcement and/or interpretation of this Order.

27.     This Order shall be effective immediately upon entry, and any stay of orders provided for in Bankruptcy Rules 6004 or 6006 or any other provision of the Bankruptcy Code or Bankruptcy Rules is expressly lifted. The Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order, and except as directed by the Court in this Order, may in their discretion and without further delay take any action and perform any act authorized under this Order.

28.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

cc:

All attorneys who have entered an appearance and who are registered e-filers.

## **Exhibit 1**

## IN RE SPECIALTY HOSPITAL OF WASHINGTON, LLC, *et al.*
### BIDDING PROCEDURES

Set forth below are the bidding procedures (the "**Bidding Procedures**") to be employed in connection with the sale (the "**Transaction**") of substantially all of the assets (collectively, the "**Acquired Assets**") of Specialty Hospital of America, LLC; SHA Management, LLC; Specialty Hospital of Washington, LLC; Specialty Hospitals of Washington Nursing Center, LLC; Specialty Hospital of Washington Hadley, LLC; SHA Holdings, Inc.; and SHA Hadley SNF, LLC (collectively, the "**Debtors**"), as debtors and debtors-in-possession in these chapter 11 cases (the "**Cases**"), which are currently pending in the United States Bankruptcy Court for the District of Columbia (the "**Bankruptcy Court**"). The Acquired Assets to be sold and the terms and conditions upon which the Debtors contemplate consummating a sale are further described in that certain "**Stalking Horse Term Sheet**", which outlines the principle terms of a stalking horse asset purchase agreement (the "**Stalking Horse Agreement**") to be entered entered into between the Debtors and DCA Acquisitions, LLC (the "**Stalking Horse Purchaser**" or "**SHP**"). A copy of the Stalking Horse Agreement may be obtained upon written request to the Debtors' investment banker, Cain Brothers & Company, LLC, 360 Madison Avenue, New York, NY 10017 (Attn: Michael S. Zarriello, mzariello@cainbrothers.com; Bryan Cloncs, bcloncs@cainbrothers.com; Gregory J. Hychko, ghychko@cainbrothers.com).

The sale of the Acquired Assets is subject to competitive bidding as set forth herein and approval by the Bankruptcy Court pursuant to sections 363 and 365 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure. The Transaction shall also include the assumption and assignment of certain designated executory contracts and unexpired leases (collectively, the "**Designated Contracts**") under sections 363 and 365 of the Bankruptcy Code according to the process outlined below.

## A.      MARKETING BY THE DEBTORS

The Debtors shall (a) coordinate the efforts of potential bidders in conducting their respective due diligence, (b) evaluate bids from potential bidders, (c) negotiate any bid made to acquire the Acquired Assets and assume Designated Contracts, (d) conduct an auction (the "**Auction**") if a Qualified Bid is received other than the Stalking Horse Agreement, and (e) make such other determinations as are provided in these Bidding Procedures. Neither the Debtors nor their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Acquired Assets, or any portion thereof, to any person who is not, in the Debtors' reasonable judgment, in consultation with their advisors, a potential qualified bidder.

## B.      BID DEADLINE

A potential bidder that desires to make a bid shall deliver copies of its bid package by email to: (i) counsel to the Debtors, Pillsbury Winthrop Shaw Pittman LLP, 2300 N Street, NW, Washington, D.C. 20037-1122 (Attn: Patrick Potter, patrick.potter@pillsburylaw.com) and Pillsbury Winthrop Shaw Pittman LLP, 1540 Broadway, New York, NY (Attn: Andrew Troop, andrew.troop@pillsburylaw.com); (ii) the Debtors' financial advisor, Alvarez & Marsal Healthcare Industry Group, LLC, 600 Madison Avenue, 8th Floor, New York, NY 10022 (Attn: Ronald Winters, rwinters@alvarezandmarsal.com; Maria Arnaoudona, marnaoudona@alvarezandmarsal.com); (iii) the Debtors' investment banker, Cain Brothers

& Company, LLC, 360 Madison Avenue, New York, NY 10017 (Attn: Michael S. Zarriello, mzariello@cainbrothers.com; Bryan Clonz, bclonz@cainbrothers.com; Gregory J. Hychko, ghychko@cainbrothers.com); and (iv) counsel to the official committee of unsecured creditors (the "**Committee**"), Weily Rein LLP, 1776 K Street, NW, Washington, DC 20006 (Attn: Valerie P. Morrison, vmorrison@wileyrein.com; Dylan Trache, dtrache@wileyrein.com), so as to be actually received on or before **June 20, 2014 at 5:00 p.m. (prevailing Eastern Time)** (the "**Bid Deadline**"), which deadline may be extended by the Debtors.  No bids submitted after the Bid Deadline shall be considered by the Debtors.

## C.   DUE DILIGENCE

Subject to a potential bidder entering into a confidentiality agreement satisfactory to the Debtors in their business judgment, the Debtors may afford any potential bidder, whom the Debtors, in consultation with their advisors, believe has the wherewithal to close the Transaction, the opportunity to conduct a reasonable due diligence review in the manner determined by the Debtors in their discretion. The Debtors shall not be obligated to, but may, furnish access to any due diligence information of any kind after the Bid Deadline. The Debtors intend to use reasonable efforts to provide to all potential qualified bidders certain information in connection with the proposed sale and assumption and assignment of Designated Contracts, including, among other things, these proposed Bidding Procedures and the Stalking Horse Agreement.  However, the Debtors' failure to deliver any such information to any potential bidders shall not affect the validity, effectiveness or finality of the Auction or the sale process.  All diligence inquiries must be directed to Alvarez & Marsal Healthcare Industry Group, LLC, 600 Madison Avenue, 8th Floor, New York, NY 10022 (Attn: Ronald Winters, rwinters@alvarezandmarsal.com; Maria Arnaoudona, marnaoudona@alvarezandmarsal.com); and the Debtors' investment banker, Cain Brothers & Company, LLC, 360 Madison Avenue, New York, NY 10017 (Attn: Michael S. Zarriello, mzariello@cainbrothers.com; Bryan Cloncs, bcloncs@cainbrothers.com; Gregory J. Hychko, ghychko@cainbrothers.com).  Inquiries may be made by either email or regular mail.

## D.   BID REQUIREMENTS

A bid submitted will be considered a qualified bid and the potential bidder will be considered a qualified bidder (a "**Qualified Bid**" and "**Qualified Bidder**," respectively), only if the bid is submitted by a bidder that in the Debtors' business judgment, in consultation with their advisors and the Committee, complies with all of the following requirements:

 a. The bid states that the potential qualified bidder offers to purchase, in cash, the Acquired Assets and to assume liabilities and/or contracts (or offers to purchase less than all of the Acquired Assets, including the exclusion of the Debtors' accounts receivable) upon the terms and conditions that the Debtors in their business judgment, in consultation with their advisors and the Committee, reasonably determine are no less favorable to the Debtors than those set forth in the Stalking Horse Agreement;

 b. The bid includes a signed writing that the potential qualified bidder's offer is irrevocable until the selection of the Successful Bidder, provided that if such potential qualified bidder is selected as (A) the Successful Bidder, its offer shall remain irrevocable until the earlier of (i) the outside date by which all regulatory approvals and other conditions to closing shall have been satisfied

or waived, (ii) the date the Sale Order is entered if the sale transaction with such potential qualified bidder is denied or (iii) the date that is sixty-five (65) days after the Sale Hearing, or (B) the Next Best Bidder (as defined below), its offer shall remain irrevocable until the earlier of (i) the closing of the sale to the Successful Bidder, or (ii) the date that is thirty (30) days after the earlier of (I) the outside date by which all regulatory approvals or other conditions to closing under the Successful Bidder's asset purchase agreement shall have been satisfied or waived, or (II) the date that is sixty-five (65) days after the Sale Hearing;

c.      There are no conditions precedent to the potential qualified bidder's ability to enter into a definitive enforceable agreement and that all necessary internal and shareholder approvals have been obtained prior to the Bid Deadline; and there are no conditions precedent (due diligence, financing, or otherwise) to the closing of the Transaction, other than conditions precedent consistent with those set forth in the Stalking Horse Agreement;

d.      The bid includes a duly authorized and executed copy of an asset purchase agreement (an "**Asset Purchase Agreement**"), including the purchase price for the Assets (the "**Proposed Purchase Price**"), together with all exhibits and schedules thereto, together with copies marked to show any amendments and modifications to the Stalking Horse Agreement and the proposed order to approve the sale by the Bankruptcy Court;

e.      The Bid includes written evidence of a firm, irrevocable commitment for debt or equity financing, or other evidence of ability to consummate the proposed sale transaction, that will allow the Debtors in their business judgment, in consultation with their advisors and the Comittee, to make a determination as to the bidder's financial, regulatory, and other capabilities to consummate the sale transaction contemplated by the Asset Purchase Agreement;

f.      The bid has value to the Debtors that is greater than or equal to (i) the Total Transaction Value,[1] plus (ii) $1.5 million (the "**Breakup Fee**"), plus (iii) the

---

[1]      The term Total Transaction Value means:  The purchase price (the "**Purchase Price**") for the purchase, sale, assignment and conveyance of the Debtors' right, title and interest in, to and under the Acquired Assets (as defined below), free and clear of all interests, claims, liens and encumbrances pursuant to section 363(f) of the Bankruptcy Code, which shall consist of: (a) a $15 million DIP loan term facility, with all sums owing thereon to be credit-bid by the Purchaser at closing pursuant to Bankruptcy Code Section 363(k); plus (b) the assumption by the Stalking Horse Purchaser of certain liabilities set forth in the Stalking Horse Agreement, including the Regulatory Agreements, and the payment of the Cure Costs (as defined below) relating to the Designated Contracts; plus (c) an amount not to exceed $200,000 (or as otherwise approved by the Stalking Horse Purchaser in its sole discretion), to conduct the orderly wind-down or dismissal of the bankruptcy cases following the sale contemplated by the Transaction; and plus (d) in the sole discretion of SHP, an amount up to the face amount of the BB&T Debt, which has been purchased by and assigned to SHP in satisfaction of all claims BB&T has or may have in respect of the BB&T Debt, including, without limitation, BB&T's first priority lien on the Owned Real Property.

Expense Reimbursement, as defined in the Stalking Horse Agreement (but in any event capped at $1.3 million), plus (iv) $100,000 (the "**Initial Overbid**");

g.     The bid identifies with particularity which executory contracts and unexpired leases the potential qualified bidder designates to assume, and provides details of the potential qualified bidder's proposal for the payment (or treatment) of related cure costs with respect to the Designated Contracts;

h.     The bid includes an acknowledgement and representation that the potential qualified bidder:  (i) has had an opportunity to conduct any and all required due diligence regarding the Acquired Assets and Designated Contracts prior to making its bid; (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Acquired Assets and Designated Contracts in making its bid; (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Acquired Assets and Designated Contracts or the completeness of any information provided in connection therewith or with the Auction, except as expressly stated in the Asset Purchase Agreement; and (iv) is not entitled to and waives any right to assert a claim for any expense reimbursement, breakup fee, or similar type of payment in connection with its due diligence and bid;

i.     The bid includes evidence, in form and substance reasonably satisfactory to the Debtors (with Committee consultation), of authorization and approval from the potential qualified bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Asset Purchase Agreement, and any amendments thereto negotiated or occasioned by its participation in the Auction;

j.     The bid is accompanied by a good faith deposit in the form of a wire transfer (to an escrow agent specified by the Debtors (the "**Escrow Agent**")), certified check or such other form acceptable to the Debtors, payable to the order of the Escrow Agent in an amount equal to ten percent (10%) of the Proposed Purchase Price (the "**Good Faith Deposit**");

k.     The bid contains sufficient information, in the Debtors' business judgment in consultation with its advisors and the Committee, concerning the potential qualified bidder's ability to provide adequate assurance of performance with respect to executory contracts and unexpired leases;

l.     The bidder commits to supplement the bid with other information reasonably requested by the Debtors or the Committee before or after the Bid Deadline; and

m.     The bid is received by the relevant parties set forth in the Bidding Procedures prior to the Bid Deadline.

The Debtors, the Committee and their professionals will review each potential qualified bid received from a potential qualified bidder to ensure that both the bid and the bidder meet the requirements set forth above. A potential qualified bid received from a

potential qualified bidder that the Debtors, in consultation with the Committee, determine meets the above requirements will be considered a "Qualified Bid" and each potential bidder that submits a Qualified Bid will be considered a "Qualified Bidder." The Debtors, in their business judgment and in consultation with the Committee, reserve the right to reject any bid, without limitation.

The Stalking Horse Agreement is a Qualified Bid for all purposes and the Stalking Horse Purchaser is a Qualified Bidder for all purposes and requirements pursuant to these Bidding Procedures at all times.

The Debtors, in consultation with the Committee, may value a Qualified Bid based upon any and all factors that the Debtors deem pertinent, including, among others: (a) the Proposed Purchase Price of the Qualified Bid and the assumption of cure obligations respecting the assumption and assignment of Designated Contracts; (b) the risks and timing associated with consummating the Transaction with the Qualified Bidder, including, without limitation, all necessary regulatory approvals; (c) the risks associated with and extent of any non-cash consideration in any Qualified Bid; (d) any assets, contracts, or leases excluded from the Transaction; (e) the Qualified Bidder's experience and ability in managing healthcare assets, including long term acute care hospitals; and (f) any other factors that the Debtors may deem relevant to the proposed Transaction.

The Good Faith Deposits of all Qualified Bidders shall be held by the Escrow Agent in a separate account for the Debtors' benefit. If a Successful Bidder fails to consummate an approved Transaction because of a breach or failure to perform on the part of such Successful Bidder, such Successful Bidder's Good Faith Deposit will be forfeited to the Debtors. Any disputes with respect to the transfer of the Good Faith Deposits shall be resolved by the Bankruptcy Court.

## E.    CREDIT BID

On or before the Bid Deadline, parties holding a valid lien on some or all of the Acquired Assets that secures an allowed secured claim may submit a credit bid for some or all of such Acquired Assets to the fullest extent permitted under section 363(k) of the Bankruptcy Code. The parties reserve their rights to object to SHP's ability to credit bid the full face amount of the BB&T Debt.

## F.    MODIFICATIONS/RESERVATION OF RIGHTS

After consulting with the Committee, the Debtors may (i) determine, in their reasonable discretion, which Qualified Bid or Qualified Bids, if any, to present to the Bankruptcy Court as the highest or otherwise best offer for the Acquired Assets, (ii) reject, at any time before entry of an order of the Bankruptcy Court approving any Qualified Bid as the Successful Bid, any bid that, in the Debtors' reasonable discretion, is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code or these Bidding Procedures, or (c) contrary to the best interests of the Debtors and their bankruptcy estates and creditors; provided, that the Stalking Horse Purchaser's bid and the Stalking Horse Agreement, after approval of these Bidding Procedures, may not be rejected under (a), (b), or (c) of this provision, (iii) withdraw, in their business judgment, the Motion, as modified, if pursuing approval of the Motion, as modified, is determined to be contrary to the best interests of the Debtors and their bankruptcy estates and creditors, and (iv) cancel, in their business judgment, the Auction and pursue an alternative transaction if such alternative

transaction is determined to be in the best interests of the Debtors and their bankruptcy estates and creditors.

The Debtors may extend or alter any deadline contained in these Bidding Procedures that will better promote their receipt of higher or otherwise better offers for the Acquired Assets and Designated Contracts. These Bidding Procedures are solely for the benefit of the Debtors and their bankruptcy estates. The Debtors may waive or modify the provisions in these Bidding Procedures or adopt additional procedures as they see fit in their business judgment.

## G.    AUCTION

If the Debtors do not receive any Qualified Bids other than from the Stalking Horse Purchaser, they will not hold an Auction and the Stalking Horse Purchaser will be named the Successful Bidder, subject to entry of the Sale Order.

If more than one Qualified Bid has been received, the Debtors will conduct an Auction for the sale of the Acquired Assets.  Prior to the Auction, the Debtors shall send a copy of all Qualified Bids to all Qualified Bidders.  The Auction shall take place on **June 23, 2014 at 10:00 a.m. (prevailing Eastern Time)** at the offices of Pillsbury Winthrop Shaw Pittman LLP, 2300 N Street, NW, Washington, D.C. 20037-1122, or such later time or such other place as the Debtors shall designate in a subsequent notice to all Qualified Bidders and Notice Parties. The Auction may be adjourned or rescheduled without further notice by an announcement of the adjourned date at the Auction. The Debtors reserve the right to cancel the Auction in their reasonable discretion.

Unless otherwise ordered by the Court for cause shown, only the Stalking Horse Purchaser and Qualified Bidders will be eligible to participate at the Auction. Representatives of the following parties-in-interest shall be entitled to attend and observe the Auction:  Debtors, Committee, Qualified Bidders, holders of liens encumbering the Acquired Assets, and federal and local regulators.  The Debtors, in their discretion, may deny access to the Auction to any other entity or person, including the media.

Each Qualified Bidder may be required to confirm at the commencement of and from time to time during the Auction that it has not engaged in any collusive behavior with respect to the sale of the Acquired Assets, the bidding or the Auction.  Bidding at the Auction will be videotaped and/or transcribed.

The bidding shall start at the amount offered in the highest or otherwise best Qualified Bid, as determined and announced by the Debtors, in consultation with their advisors, and will continue in increments of at least $100,000 until the bidding ceases. The Stalking Horse Purchaser will have the right to credit bid all indebtedness that is owed under the DIP Loan as of the Closing Date.

Prior to the conclusion of the Auction, the Debtors, in consultation with their advisors and the Committee, will (a) review the last bid by each of the Qualified Bidders made at the Auction on the basis of financial and contractual terms and such factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the sale, (b) determine the highest or otherwise best bid or combination of bids for the Acquired Assets and Designated Contracts at the Auction (the "**Successful Bid**"), and (c) notify all Qualified Bidders at the Auction of the name of the Successful

Bidder.  The Debtors will present the Successful Bid to the Court for approval at the Sale Hearing.

After determining the Successful Bid, the Debtors may, in consultation with their advisors and the Committee, determine which Qualified Bid is the next best bid (the "**Next Best Bid**").  The Debtors will present the Next Best Bid to the Court for Approval at the Sale Hearing.  If the Successful Bidder does not close the Transaction by the date set forth in the Successful Bid or otherwise agreed to by the Debtors and the Successful Bidder, then the Debtors shall be authorized to close with the party that submitted the Next Best Bid (the "**Next Best Bidder**"), without a further court order.  The party that submits the Next Best Bid shall be required to close the Transaction by the date set forth in the Next Best Bid (excusing the time between the Auction and the date the Next Best Bidder is advised that the Debtors will seek to close under the Next Best Bid), or otherwise agreed to by the Debtors and the Next Best Bidder.

All bidders at the Auction shall be deemed to have consented to these Bidding Procedures and to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Auction, the sale and the construction and enforcement of the applicable Asset Purchase Agreement.

## H.      NO ENTITLEMENT TO FEES FOR POTENTIAL BIDDERS OR QUALIFIED BIDDERS

The performance of due diligence, the tendering of a bid, the determination that a bid is a Qualified Bid or the participation of a Qualified Bidder at the Auction shall not entitle a potential qualified bidder or Qualified Bidder to any breakup, termination or similar fee or reimbursement of expenses and all potential qualified bidders and Qualified Bidders waive any right to seek a claim for substantial contribution. Notwithstanding the foregoing, the Stalking Horse Purchaser shall be entitled to payment of the Breakup Fee and the Expense Reimbursement as provided in the Stalking Horse Agreement and the order approving these Bidding Procedures.

## I.      RETURN OF THE GOOD FAITH DEPOSIT

The Good Faith Deposits of Qualified Bidders shall be held in escrow by the Escrow Agent.  The Good Faith Deposits of all potential qualified bidders that are determined not to be Qualified Bidders shall be returned promptly by the Escrow Agent.  The Good Faith Deposits of all Qualified Bidders, other than the Successful Bidder and the Next Best Bidder, shall be returned within two (2) business days after the conclusion of the Sale Hearing (as defined below).

The Good Faith Deposit of the Next Best Bidder shall be returned within two (2) business days after the consummation of the Transaction with the Successful Bidder, but in no event later than seventy (70) days after the Sale Hearing.

## J.      AS IS, WHERE IS

The Transaction shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtors, their estates, or their agents or representatives.  Except as otherwise expressly provided in these Bidding Procedures, the Stalking Horse Agreement, or any applicable Asset Purchase Agreement, each Qualified

Bidder shall be deemed to acknowledge and represent that it (i) has had an opportunity to conduct any and all reasonable due diligence regarding the Acquired Assets and Designated Contracts prior to making its bid, (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Acquired Assets and Designated Contracts in making its bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Acquired Assets and Designated Contracts, or the completeness of any information provided in connection therewith.

**K.    SALE HEARING**

The Debtors will seek entry of an order from the Bankruptcy Court at a hearing (the "**Sale Hearing**") to begin on **June 25, 2014 at 10:30 a.m. (prevailing Eastern Time)** to approve and authorize the Transaction with the Successful Bidder and conditionally approve the Transaction with the Next Best Bidder.[2]   The Sale Hearing may be adjourned or rescheduled without further notice by an announcement of the adjourned date at the Sale Hearing.

---

[2]    The deadline for objecting to the sale, including the assumption and assignment of executory contracts, is **2:00 p.m. on June 24, 2014**.

# Exhibit 2

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| In re:<br><br>SPECIALTY HOSPITAL OF<br>WASHINGTON, LLC, *et al.*,<br><br>Debtors.[1] | Case No. 14-00279<br><br>Chapter 11<br><br>(Jointly Administered with Chapter 11<br>Case Nos. 14-00295 – 14-00300) |

**NOTICE OF BID DEADLINE, AUCTION AND SALE
HEARING IN CONNECTION WITH THE
SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS
FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.     The above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**"), seek to sell substantially all of their assets (the "**Assets**") free and clear of any and all liens, claims, and encumbrances.

2.     On May 21, 2014, the Debtors filed a motion (the "**Sale Motion**") with the United States Bankruptcy Court for the District of Columbia (the "**Court**") seeking, among other things, entry of an order (the "**Bidding Procedures Order**") (i) approving certain auction and bidding procedures in connection with the sale of substantially all of the Debtors' assets (the "**Bidding Procedures**"), (ii) authorizing the Debtors to enter into a stalking horse purchase agreement, subject to higher or otherwise better offers, (iii) approving procedures relating to the assumption and assignment of executory contracts and unexpired leases ("**Assumption and Assignment Procedures**"), (iv) scheduling an auction (the "**Auction**") and sale approval hearing (the "**Sale Hearing**"), (v) approving the form and manner of sale notice, and (vi) granting related relief.[2]

3.     On June 2, 2014, the Court entered the Bidding Procedures Order.  All interested parties are invited to make offers to purchase the Acquired Assets in accordance with the Bidding Procedures and the Bidding Procedures Order. Copies of the Bidding Procedures and

---

[1]     The debtors in these chapter 11 cases and each debtor's federal identification number ("EIN") and chapter 11 case number are:  Specialty Hospital of Washington, LLC (EIN: 81-0681352; Case No. 14-00279), Specialty Hospital of America, LLC (EIN: 81-0681347; Case No. 14-00295), SHA Holdings, Inc. (EIN: 20-5741943; Case No. 14-00296), SHA Management, LLC (EIN: 81-0681350; Case No. 14-00297), Specialty Hospital of Washington Nursing Center, LLC (EIN: 81-0681348; Case No. 14-00298), Specialty Hospital of Washington Hadley, LLC (EIN: 20-5752586; Case No. 14-00299), and SHA Hadley SNF, LLC (EIN: 20-5741976; Case No. 14-00300).

[2]     Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Sale Motion.

Bidding Procedures Order may be obtained by:  (a) written request to the Debtors' counsel, Pillsbury Winthrop Shaw Pittman LLP, 2300 N Street, NW, Washington, D.C. 20037-1122 (Attn: Dania Slim; dania.slim@pillsburylaw.com); (b) accessing the Court's website at http://www.dcb.uscourts.gov (please note that a PACER password is needed to access documents on the Court's website); or (c) viewing the docket of these cases at the office of the Clerk of the Court, United States Bankruptcy Court for the District of Columbia, 333 Constitution Avenue, NW, Suite 1225, Washington, DC 20001. **All interested parties should carefully read the Bidding Procedures**.

4.     The deadline to submit offers to purchase the Acquired Assets is **June 20, 2014 at 5:00 p.m. (prevailing Eastern Time)** (the "**Bid Deadline**").  Pursuant to the Bidding Procedures and Bidding Procedures Order, if one or more Qualified Bids (as defined in the Bidding Procedures), separate and apart from the bid of the Stalking Horse Purchaser, are received on or before the Bid Deadline, the Debtors will conduct the Auction commencing on **June 23, 2014 at 10:00 a.m. (prevailing Eastern Time)**, at the offices of Pillsbury Winthrop Shaw Pittman LLP, 2300 N Street, NW, Washington, DC 20037-1122 or such later time or such other place as the Debtors shall designate in a subsequent notice to all Qualified Bidders and Notice Parties (as defined in the Bidding Procedures), to determine the highest or otherwise best bid for the Acquired Assets (the "**Successful Bid**").

5.     Only an entity that has submitted a Qualified Bid (a "**Qualified Bidder**") in accordance with the Bidding Procedures to the following is eligible to participate in the auction: (i) counsel to the Debtors, Pillsbury Winthrop Shaw Pittman LLP, 2300 N Street, NW, Washington, DC 20037-1122 (Attn: Patrick Potter, patrick.potter@pillsburylaw.com) and Pillsbury Winthrop Shaw Pittman LLP, 1540 Broadway, New York, NY (Attn: Andrew Troop, andrew.troop@pillsburylaw.com); (ii) the Debtors' financial advisor, Alvarez & Marsal Healthcare Industry Group, LLC, 600 Madison Avenue, 8th Floor, New York, NY 10022 (Attn: Ronald Winters, rwinters@alvarezandmarsal.com); (iii) the Debtors' investment banker, Cain Brothers & Company, LLC, 360 Madison Avenue, New York, NY 10017 (Attn: Gregory J. Hychko, ghychko@cainbrothers.com); and (iv) counsel to the Committee, Wiley Rein LLP, 1776 K Street, NW, Washington, DC 2006 (Attn: Valerie P. Morrison, vmorrison@wileyrein.com; Dylan Trache, dtrache@wileyrein.com).

6.     The sale of the Acquired Assets to the Successful Bidder shall be presented for authorization and approval by the Court at the Sale Hearing, which is currently scheduled to be held on **June 25, 2014 at 10:30 a.m. (prevailing Eastern Time**) at the United States Bankruptcy Court for the District of Columbia, 333 Constitution Avenue, NW, Courtroom 1, Washington, D.C. 20001 before the Honorable S. Martin Teel, Jr., United States Bankruptcy Judge.  The Sale Hearing may be adjourned or rescheduled without further notice by announcing the adjourned date at the Sale Hearing.

7.     Objections, if any, to approval of the sale of the Acquired Assets to the Successful Bidder shall (i) be in writing, (ii) comply with the Bankruptcy Rules, (iii) set forth the name of the objector, (iv) state with particularity the legal and factual bases for such objection, and (v) be filed with the Clerk of the Court, United States Bankruptcy Court for the District of Columbia, 333 Constitution Avenue, NW, Suite 1225, Washington, D.C. 20001, together with proof of service thereof, and served on the following parties **so as to be _actually received_ no later than**

**2:00 p.m. (prevailing Eastern Time) on June 24, 2014** (the "**Objection Deadline**") to (a) counsel to the Debtors, Pillsbury Winthrop Shaw Pittman LLP, 2300 N Street, NW, Washington, D.C. 20037-1122 (Attn: Patrick Potter, patrick.potter@pillsburylaw.com) and Pillsbury Winthrop Shaw Pittman. LLP, 1540 Broadway, New York, NY (Attn: Andrew Troop, andrew.troop@pillsburylaw.com); (b) counsel for the Stalking Horse Purchaser for noticing purposes, Squire Patton Boggs LLP, One East Washington Street, Suite 2700, Phoenix, AZ 85004 (Attn: Craig D. Hansen, craig.hansen@squirepb.com); (c) counsel to the Committee, Wiley Rein LLP, 1776 K Street, NW, Washington, DC 2006 (Attn: Valerie P. Morrison, vmorrison@wileyrein.com; Dylan Trache, dtrache@wileyrein.com); (d) counsel to the Successful Bidder, if not the Stalking Horse Purchaser; and (e) the Office of the United States Trustee for the District of Columbia, 115 S. Union Street, Room 210, Alexandria, VA 22314 (Attn: Bradley Jones, Bradley.D.Jones@usdoj.gov).

8.      Failure of any entity to file an objection on or before the Objection Deadline shall be deemed to constitute consent to the sale of the Acquired Assets to the Successful Bidder and other relief requested in the Sale Motion, and be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Sale Motion, the Auction, the sale of the Acquired Assets, or the Debtors' consummation and performance of the terms of the asset purchase agreement entered into with the Successful Bidder, if authorized by the Court.

9.      After determining the Successful Bid, the Debtors may determine which Qualified Bid is the next best bid (the "**Next Best Bid**"). If the Successful Bidder does not close the sale by the date agreed to by the Debtors and the Successful Bidder, then the Debtors shall be authorized to close with the party that submitted the Next Best Bid (the "**Next Best Bidder**"), without a further court order. The Next Best Bidder shall be required to close the sale with the Debtors to the extent the Successful Bidder fails to close.

10.      This notice is subject to the full terms and conditions of the Sale Motion, the Bidding Procedures, and the Bidding Procedures Order, and the Debtors encourage any interested parties to review such documents in their entirety. To the extent that this notice is inconsistent with the Bidding Procedures Order, the terms of the Bidding Procedures Order shall govern.

*[Signature Block on the Next Page]*

PILLSBURY WINTHROP SHAW PITTMAN LLP

/s/ *Patrick Potter*
Patrick Potter (426514)
Jerry Hall (976461)
Dania Slim (991689)
2300 N Street, NW
Washington, DC 20037-1122
Telephone:  (202) 663-8000
Facsimile:  (202) 663-8007
patrick.potter@pillsburylaw.com
jerry.hall@pillsburylaw.com
dania.slim@pillsburylaw.com

Andrew M. Troop (admitted *pro hac vice*)
1540 Broadway
New York, NY 10036-4039
Telephone: (212) 858-1000
Facsimile: (212) 858-1500
andrew.troop@pillsburylaw.com

*Counsel for the Debtors*

## Exhibit 3

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| In re:<br><br>SPECIALTY HOSPITAL OF<br>WASHINGTON, LLC, *et al.*,<br><br>Debtors.[1] | Case No. 14-00279<br><br>Chapter 11<br><br>(Jointly Administered with Chapter 11<br>Case Nos. 14-00295 – 14-00300) |

**NOTICE OF POTENTIAL ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS ASSETS**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      On June 2, 2014, the United States Bankruptcy Court for the District of Columbia (the "**Court**") entered an order (the "**Bidding Procedures Order**") in the chapter 11 cases (the "**Cases**") of the above-captioned debtors and debtors-in-possession (the "**Debtors**") approving, among other things, certain procedures related to the assumption and assignment of executory contracts and unexpired leases (the "**Designated Contracts**") listed on **Exhibit 1** annexed to this Notice in connection with the sale of substantially all of the Debtors' assets (the "**Acquired Assets**"). The Debtors may assume and assign the Designated Contracts to the successful bidder for the Acquired Assets (the "**Successful Bidder**") under the bidding procedures (the "**Bidding Procedures**") approved by the Bankruptcy Court in connection with the Bidding Procedures Order.

2.      The Debtors believe that any and all defaults (other than the filing of these Cases) and actual pecuniary losses under the Designated Contracts can be cured by the payment of the cure amounts (the "**Cure Amounts**") listed on **Exhibit 1** annexed to this Notice (the "**Assignment Schedule**"). The Debtors reserve the right to delete items from, supplement, and modify the Assignment Schedule at any time, provided that to the extent that the Debtors add a Designated Contract to the Assignment Schedule or modify the Cure Amount, the affected party shall receive separate notice and an opportunity to objection to such addition or modification.

---

[1]      The debtors in these chapter 11 cases and each debtor's federal identification number ("EIN") and chapter 11 case number are:  Specialty Hospital of Washington, LLC (EIN: 81-0681352; Case No. 14-00279), Specialty Hospital of America, LLC (EIN: 81-0681347; Case No. 14-00295), SHA Holdings, Inc. (EIN: 20-5741943; Case No. 14-00296), SHA Management, LLC (EIN: 81-0681350; Case No. 14-00297), Specialty Hospital of Washington Nursing Center, LLC (EIN: 81-0681348; Case No. 14-00298), Specialty Hospital of Washington Hadley, LLC (EIN: 20-5752586; Case No. 14-00299), and SHA Hadley SNF, LLC (EIN: 20-5741976; Case No. 14-00300).

3.       Any objection to the assumption and assignment of any Designated Contract, including, without limitation, any objection to the Cure Amount or the ability of the Successful Bidder to provide adequate assurance of future performance under such Designated Contract, must (i) be in writing, (ii) set forth the basis for the objection as well as any cure amount that the objector asserts to be due (in all cases with appropriate documentation in support thereof), and (iii) be filed with the Clerk of the Court, United States Bankruptcy Court for the District of Columbia, 333 Constitution Avenue, NW, Suite 1225, Washington, D.C. 20001, and served on (a) counsel to the Debtors, Pillsbury Winthrop Shaw Pittman LLP, 2300 N Street, NW, Washington, D.C. 20037-1122 (Attn: Patrick Potter, patrick.potter@pillsburylaw.com) and Pillsbury Winthrop Shaw Pittman LLP, 1540 Broadway, New York, NY (Attn: Andrew Troop, andrew.troop@pillsburylaw.com); (b) counsel for the Stalking Horse Purchaser for noticing purposes, Squire Patton Boggs LLP, One East Washington Street, Suite 2700, Phoenix, AZ 85004 (Attn: Craig D. Hansen, craig.hansen@squirepbs.com); (c)  counsel to the Committee, Wiley Rein LLP, 1776 K Street, NW, Washington, DC 2006 (Attn: Valerie P. Morrison, vmorrison@wileyrein.com; Dylan Trache, dtrache@wileyrein.com); (d) counsel to the Successful Bidder, if not the Stalking Horse Purchaser; and (e) the Office of the United States Trustee for the District of Columbia, 115 S. Union Street, Room 210, Alexandria, VA 22314 (Attn: Bradley Jones, Bradley.D.Jones@usdoj.gov), **so as to be <u>actually received</u> no later than 2:00 p.m. (prevailing Eastern Time) on June 24, 2014** (the "**Assignment and Cure Objection Deadline**").

4.       To the extent that any entity does not timely object as set forth above, such entity shall be (i) forever barred from objecting to the assumption and assignment of its respective Designated Contracts identified on the Assignment Schedule, including, without limitation, asserting any additional cure payments or requesting additional adequate assurance of future performance, (ii) deemed to have consented to the applicable Cure Amount, if any, and to the assumption and assignment of the applicable Designated Contract, (iii) bound to such corresponding Cure Amount, if any, (iv) deemed to have agreed that the Successful Bidder has provided adequate assurance of future performance within the meaning of section 365(b)(1)(C) of the Bankruptcy Code, (v) deemed to have agreed that all defaults under the applicable Designated Contract arising or continuing prior to the effective date of the assignment have been cured as a result or precondition of the assignment, such that the Successful Bidder or the Debtors shall have no liability or obligation with respect to any default occurring or continuing prior to the assignment, and from and after the date of the assignment the applicable Designated Contract shall remain in full force and effect for the benefit of the Successful Bidder and such entity in accordance with its terms, (vi) deemed to have waived any right to terminate the applicable Designated Contract or designate an early termination date under the applicable Designated Contract as a result of any default that occurred and/or was continuing prior to the assignment date, (vii) deemed to have agreed that the Debtors are not obligated under the Designated Contracts following the effective date of the assumption and assignment, and (viii) deemed to have agreed that the terms of the Sale Order shall apply to the assumption and assignment of the applicable Designated Contract.

5.       If an objection is timely received and such objection cannot otherwise be resolved by the parties, the Court may hear such objection at the Sale Hearing or at a later date set by the Court.  The pendency of a dispute relating to the Cure Amount will not prevent or delay the assumption and assignment of any Designated Contract or the sale of the Acquired Assets to the

Successful Bidder.  If an objection is filed only with respect to the cure amount listed on the Cure Notice, the dispute with respect to the cure amount will be resolved consensually, if possible, or, if the parties are unable to resolve their dispute, before the Court.

6.      The Debtors' decision to assume and assign to the Successful Bidder a Designated Contract is subject to Court approval and the sale closing.  Accordingly, absent such approval and closing, any of the Designated Contracts shall not be deemed to be assumed and assigned, and shall in all respects be subject to further administration under the Bankruptcy Code.  The inclusion of any document on the Assignment Schedule shall not constitute or be deemed a determination or admission by the Debtors or the Successful Bidder that the document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code (all rights with respect thereto being expressly reserved).

7.      Any anti-assignment provisions contained in, or otherwise purporting to affect, the Designated Contracts shall not restrict, limit or prohibit the assumption, assignment and sale of such Designated Contracts, and such provisions are deemed unenforceable anti-assignment provisions within the meaning of section 365(f) of the Bankruptcy Code.

8.      Copies of the Bidding Procedures Order and other relevant documents may be obtained by: (a) written request to the Debtors' counsel, Pillsbury Winthrop Shaw Pittman LLP, 2300 N Street, NW, Washington, D.C. 20037-1122 (Attn: Dania Slim; dania.slim@pillsburylaw.com); (b) accessing the Court's website at http://www.dcb.uscourts.gov (please note that a PACER password is needed to access documents on the Court's website); or (c) viewing the docket of these cases at the office of the Clerk of the Court, United States Bankruptcy Court for the District of Columbia, 333 Constitution Avenue, NW, Suite 1225, Washington, D.C. 20001.

*[Signature Block on the Next Page]*

3

Dated: June ___, 2014

PILLSBURY WINTHROP SHAW PITTMAN LLP

/s/ *Patrick Potter*
Patrick Potter (426514)
Jerry Hall (976461)
Dania Slim (991689)
2300 N Street, NW
Washington, DC 20037-1122
Telephone:  (202) 663-8000
Facsimile:  (202) 663-8007
patrick.potter@pillsburylaw.com
jerry.hall@pillsburylaw.com
dania.slim@pillsburylaw.com

-and-

Andrew M. Troop (admitted *pro hac vice*)
1540 Broadway
New York, NY 10036-4039
Telephone: (212) 858-1000
Facsimile: (212) 858-1500
andrew.troop@pillsburylaw.com

*Counsel for Debtors*

**Exhibit 1**

Assignment Schedule