## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| In re:<br><br>SPECIALTY HOSPITAL OF<br>WASHINGTON, LLC, *et al.*,<br><br>Debtors.[1] | Case Nos. 14-00279 and<br>14-00295 through 14-00300<br><br>(Chapter 11)<br><br>(Jointly Administered Under<br>Case No. 14-00279) |

### NOTICE OF MODIFICATIONS TO BIDDING PROCEDURES

**PLEASE TAKE NOTICE** of the modified bidding procedures attached hereto as

Exhibit 1.  A comparison of the modified bidding procedures to the version of the bidding

procedures approved by the Court on June 2, 2014, is attached hereto as Exhibit 2.[2]

Dated: June 6, 2014

PILLSBURY WINTHROP SHAW PITTMAN LLP

/s/ *Patrick Potter*
Patrick Potter (426514)
Jerry Hall (976461)
Dania Slim (991689)
2300 N Street, NW
Washington, DC 20037-1122
Telephone:  (202) 663-8000
Facsimile:  (202) 663-8007
patrick.potter@pillsburylaw.com
jerry.hall@pillsburylaw.com
dania.slim@pillsburylaw.com

---

[1]     The debtors in these chapter 11 cases and each debtor's federal identification number ("EIN") and chapter 11 case number are:  Specialty Hospital of Washington, LLC (EIN: 81-0681352; Case No. 14-00279), Specialty Hospital of America, LLC (EIN: 81-0681347; Case No. 14-00295), SHA Holdings, Inc. (EIN: 20-5741943; Case No. 14-00296), SHA Management, LLC (EIN: 81-0681350; Case No. 14-00297), Specialty Hospital of Washington Nursing Center, LLC (EIN: 81-0681348; Case No. 14-00298), Specialty Hospital of Washington Hadley, LLC (EIN: 20-5752586; Case No. 14-00299), and SHA Hadley SNF, LLC (EIN: 20-5741976; Case No. 14-00300).

[2]     Section F of the Bidding Procedures approved by the Court on June 2, 2014 provides: "The Debtors may waive or modify the provisions in these Bidding Procedures or adopt additional procedures as they see fit in their business judgment."  All modifications to the Bidding Procedures have been approved by the Committee.

Andrew M. Troop (admitted *pro hac vice)*
1540 Broadway
New York, NY 10036-4039
Telephone: (212) 858-1000
Facsimile: (212) 858-1500
andrew.troop@pillsburylaw.com

*Counsel for the Debtors*

## Exhibit 1

**IN RE SPECIALTY HOSPITAL OF WASHINGTON, LLC,** *et al.*
**MODIFIED BIDDING PROCEDURES**[1]
**(June 4, 2014 – Final Version)**

Set forth below are the modified bidding procedures (the "**Bidding Procedures**") to be employed in connection with the sale (the "**Transaction**") of substantially all of the assets (collectively, the "**Acquired Assets**") of Specialty Hospital of America, LLC; SHA Management, LLC; Specialty Hospital of Washington, LLC; Specialty Hospitals of Washington Nursing Center, LLC; Specialty Hospital of Washington Hadley, LLC; SHA Holdings, Inc.; and SHA Hadley SNF, LLC (collectively, the "**Debtors**"), as debtors and debtors-in-possession in these chapter 11 cases (the "**Cases**"), which are currently pending in the United States Bankruptcy Court for the District of Columbia (the "**Bankruptcy Court**"). The Acquired Assets to be sold and the terms and conditions upon which the Debtors contemplate consummating a sale are further described in that certain "**Stalking Horse Term Sheet**", which outlines the principle terms of a stalking horse asset purchase agreement (the "**Stalking Horse Agreement**") to be entered entered into between the Debtors and DCA Acquisitions, LLC (the "**Stalking Horse Purchaser**" or "**SHP**"). A copy of the Stalking Horse Agreement may be obtained upon written request to the Debtors' investment banker, Cain Brothers & Company, LLC, 360 Madison Avenue, New York, NY 10017 (Attn: Michael S. Zarriello, mzariello@cainbrothers.com; Bryan Cloncs, bcloncs@cainbrothers.com; Gregory J. Hychko, ghychko@cainbrothers.com).

The sale of the Acquired Assets is subject to competitive bidding as set forth herein and approval by the Bankruptcy Court pursuant to sections 363 and 365 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure. The Transaction shall also include the assumption and assignment of certain designated executory contracts and unexpired leases (collectively, the "**Designated Contracts**") under sections 363 and 365 of the Bankruptcy Code according to the process outlined below.

## A.    MARKETING BY THE DEBTORS

The Debtors shall, in consultation with the Committee: (a) coordinate the efforts of potential bidders in conducting their respective due diligence, (b) evaluate bids from potential bidders, (c) negotiate any bid made to acquire the Acquired Assets and assume Designated Contracts, (d) conduct an auction (the "**Auction**") if a Qualified Bid is received other than the Stalking Horse Agreement, and (e) make such other determinations as are provided in these Bidding Procedures. Neither the Debtors nor their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Acquired Assets, or any portion thereof, to any person who is not, in the Debtors'

---

[1]      The Bidding Procedures as approved by the Court on June 2, 2014, are hereby modified pursuant to Section F, which states, in part: "The Debtors may waive or modify the provisions in these Bidding Procedures or adopt additional procedures as they see fit in their business judgment."  All modifications reflected herein have been approved by the Committee.

reasonable judgment, in consultation with their advisors and consultation with the Committee, a potential qualified bidder.

## B.    BID DEADLINE

A potential bidder that desires to make a bid shall deliver copies of its bid package by email to: (i) counsel to the Debtors, Pillsbury Winthrop Shaw Pittman LLP, 2300 N Street, NW, Washington, DC 20037-1122 (Attn: Patrick Potter, patrick.potter@pillsburylaw.com) and Pillsbury Winthrop Shaw Pittman LLP, 1540 Broadway, New York, NY (Attn: Andrew Troop, andrew.troop@pillsburylaw.com); (ii) the Debtors' financial advisor, Alvarez & Marsal Healthcare Industry Group, LLC, 600 Madison Avenue, 8th Floor, New York, NY 10022 (Attn: Ronald Winters, rwinters@alvarezandmarsal.com; Maria Arnaoudona, marnaoudona@alvarezandmarsal.com); (iii) the Debtors' investment banker, Cain Brothers & Company, LLC, 360 Madison Avenue, New York, NY 10017 (Attn: Michael S. Zarriello, mzariello@cainbrothers.com; Bryan Clonz, bclonz@cainbrothers.com; Gregory J. Hychko, ghychko@cainbrothers.com); and (iv) counsel to the official committee of unsecured creditors (the "**Committee**"), Weily Rein LLP, 1776 K Street, NW, Washington, DC 20006 (Attn: Valerie P. Morrison, vmorrison@wileyrein.com; Dylan Trache, dtrache@wileyrein.com), so as to be actually received on or before **June 20, 2014 at 5:00 p.m. (prevailing Eastern Time)** (the "**Bid Deadline**"), which deadline may be extended by the Debtors.  No bids submitted after the Bid Deadline shall be considered by the Debtors.

## C.    DUE DILIGENCE

Subject to a potential bidder entering into a confidentiality agreement satisfactory to the Debtors in their business judgment, the Debtors may afford any potential bidder, whom the Debtors, in consultation with their advisors, believe has the wherewithal to close the Transaction, the opportunity to conduct a reasonable due diligence review in the manner determined by the Debtors in their discretion. The Debtors shall not be obligated to, but may, furnish access to any due diligence information of any kind after the Bid Deadline. The Debtors shall use reasonable efforts to provide to all potential qualified bidders certain information in connection with the proposed sale and assumption and assignment of Designated Contracts, including, among other things, access to the Debtors' data room established for this purpose, these proposed Bidding Procedures and the Stalking Horse Agreement.  However, the Debtors' refusal to deliver any such information to any potential bidders based upon the exercise of their business judgment, after consultation with the Committee, shall not affect the validity, effectiveness or finality of the Auction or the sale process; provided, further, that nothing herein shall impact the right of any party in interest to object to the sale or support the objection and/or bid of any potential bidder on the basis that such potential bidder was not provided sufficient information.

All diligence inquiries must be directed to Alvarez & Marsal Healthcare Industry Group, LLC, 600 Madison Avenue, 8th Floor, New York, NY 10022 (Attn: Ronald Winters, rwinters@alvarezandmarsal.com; Maria Arnaoudona, marnaoudona@alvarezandmarsal.com); and the Debtors' investment banker, Cain Brothers & Company, LLC, 360 Madison Avenue, New York, NY 10017 (Attn: Michael S. Zarriello, mzariello@cainbrothers.com; Bryan Cloncs, bcloncs@cainbrothers.com; Gregory J. Hychko, ghychko@cainbrothers.com).  Inquiries may be made by either email or regular mail.  The Debtors shall apprise the Committee of all requests for due diligence and the status thereof.

D.      **BID REQUIREMENTS**

A bid submitted will be considered a qualified bid and the potential bidder will be considered a qualified bidder (a "**Qualified Bid**" and "**Qualified Bidder**," respectively), only if the bid is submitted by a bidder that in the Debtors' business judgment, in consultation with their advisors and the Committee, complies with all of the following requirements:

a.      The bid states that the potential qualified bidder offers to purchase, in cash, the Acquired Assets and to assume liabilities and/or contracts (or offers to purchase less than all of the Acquired Assets, including the exclusion of the Debtors' accounts receivable) upon the terms and conditions that the Debtors in their business judgment, in consultation with their advisors and the Committee, reasonably determine are no less favorable to the Debtors than those set forth in the Stalking Horse Agreement;

b.      The bid includes a signed writing that the potential qualified bidder's offer is irrevocable until the selection of the Successful Bidder (as such term is used in the Order approving these Bidding Procedures and Debtors' motion seeking various relief, including approval of these Bidding Procedures (the "**Motion**")), provided that if such potential qualified bidder is selected as (A) the Successful Bidder, its offer shall remain irrevocable until the earlier of (i) the outside date by which all regulatory approvals and other conditions to closing shall have been satisfied or waived, (ii) the date the Sale Order is entered if the sale transaction with such potential qualified bidder is denied or (iii) the date that is sixty-five (65) days after the Sale Hearing, or (B) the Next Best Bidder (as defined below), its offer shall remain irrevocable until the earlier of (i) the closing of the sale to the Successful Bidder, or (ii) the date that is thirty (30) days after the earlier of (I) the outside date by which all regulatory approvals or other conditions to closing under the Successful Bidder's asset purchase agreement shall have been satisfied or waived, or (II) the date that is sixty-five (65) days after the Sale Hearing;

c.      There are no conditions precedent to the potential qualified bidder's ability to enter into a definitive enforceable agreement and that all necessary internal and shareholder approvals have been obtained prior to the Bid Deadline; and there are no conditions precedent (due diligence, financing, or otherwise) to the closing of the Transaction, other than conditions precedent consistent with those set forth in the Stalking Horse Agreement;

d.      The bid includes a duly authorized and executed copy of an asset purchase agreement (an "**Asset Purchase Agreement**"), including the purchase price for the Assets (the "**Proposed Purchase Price**"), together with all exhibits and schedules thereto, together with copies marked to show any amendments and modifications to the Stalking Horse Agreement and the proposed order to approve the sale by the Bankruptcy Court;

e.      The Bid includes written evidence of a firm, irrevocable commitment for debt or equity financing, or other evidence of ability to consummate the proposed sale transaction, that will allow the Debtors in their business judgment, in consultation with their advisors and the Committee, to make a determination

as to the bidder's financial, regulatory, and other capabilities to consummate the sale transaction contemplated by the Asset Purchase Agreement;

f.      The bid has value to the Debtors that is greater than or equal to (i) the Total Transaction Value,[2] plus (ii) $1.5 million (the "**Breakup Fee**"), plus (iii) the Expense Reimbursement, as defined in the Stalking Horse Agreement (but in any event capped at $1.3 million), plus (iv) $100,000 (the "**Initial Overbid**");

g.      The bid identifies with particularity which executory contracts and unexpired leases the potential qualified bidder designates to assume, and provides details of the potential qualified bidder's proposal for the payment (or treatment) of related cure costs with respect to the Designated Contracts;

h.      The bid includes an acknowledgement and representation that the potential qualified bidder:  (i) has had an opportunity to conduct any and all required due diligence regarding the Acquired Assets and Designated Contracts prior to making its bid; (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Acquired Assets and Designated Contracts in making its bid; (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Acquired Assets and Designated Contracts or the completeness of any information provided in connection therewith or with the Auction, except as expressly stated in the Asset Purchase Agreement; and (iv) is not entitled to and waives any right to assert a claim for any expense reimbursement, breakup fee, or similar type of payment in connection with its due diligence and bid;

i.      The bid includes evidence, in form and substance reasonably satisfactory to the Debtors (with Committee consultation), of authorization and approval from the potential qualified bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and

---

[2]      The term Total Transaction Value means:  The purchase price (the "**Purchase Price**") for the purchase, sale, assignment and conveyance of the Debtors' right, title and interest in, to and under the Acquired Assets (as defined above), free and clear of all interests, claims, liens and encumbrances pursuant to section 363(f) of the Bankruptcy Code, shall consist of: (a) a $15 million DIP loan term facility, with all sums owing thereon to be credit-bid by the Purchaser at closing pursuant to Bankruptcy Code Section 363(k); plus (b) the assumption by the Stalking Horse Purchaser of certain liabilities set forth in the Stalking Horse Agreement, including the Regulatory Agreements, and the payment of the Cure Costs (as defined below) relating to the Designated Contracts; plus (c) an amount not to exceed $200,000 (or as otherwise approved by the Stalking Horse Purchaser in its sole discretion), to conduct the orderly wind-down or dismissal of the bankruptcy case(s) following the sale contemplated by the Transaction; and plus (d) in the sole discretion of SHP, an amount up to $10,000,000 of the BB&T Debt, which has been purchased by and assigned to SHP.  SHP reserves the right to credit bid up to the face amount of the BB&T Debt, including without limitation BB&T's first priority lien on the Owned Real Property, and the parties reserve the right to object to any such credit bid.

closing of the Asset Purchase Agreement, and any amendments thereto negotiated or occasioned by its participation in the Auction;

j.   The bid is accompanied by a good faith deposit in the form of a wire transfer (to an escrow agent specified by the Debtors (the "**Escrow Agent**")), certified check or such other form acceptable to the Debtors, payable to the order of the Escrow Agent in an amount equal to ten percent (10%) of the Proposed Purchase Price (the "**Good Faith Deposit**");

k.   The bid contains sufficient information, in the Debtors' business judgment in consultation with its advisors and the Committee, concerning the potential qualified bidder's ability to provide adequate assurance of performance with respect to executory contracts and unexpired leases;

l.   The bidder commits to supplement the bid with other information reasonably requested by the Debtors or the Committee before or after the Bid Deadline; and

m.   The bid is received by the relevant parties set forth in the Bidding Procedures prior to the Bid Deadline.

The Debtors, the Committee and their professionals will review each potential qualified bid received from a potential qualified bidder to ensure that both the bid and the bidder meet the requirements set forth above. A potential qualified bid received from a potential qualified bidder that the Debtors, in consultation with the Committee, determine meets the above requirements will be considered a "Qualified Bid" and each potential bidder that submits a Qualified Bid will be considered a "Qualified Bidder." The Debtors, in their business judgment and in consultation with the Committee, reserve the right to reject any bid, without limitation.

The Stalking Horse Agreement is a Qualified Bid for all purposes and the Stalking Horse Purchaser is a Qualified Bidder for all purposes and requirements pursuant to these Bidding Procedures at all times.

The Debtors, in consultation with the Committee, may value a Qualified Bid based upon any and all factors that the Debtors deem pertinent, including, among others: (a) the Proposed Purchase Price of the Qualified Bid and the assumption of cure obligations respecting the assumption and assignment of Designated Contracts; (b) the risks and timing associated with consummating the Transaction with the Qualified Bidder, including, without limitation, all necessary regulatory approvals; (c) the risks associated with and extent of any non-cash consideration in any Qualified Bid; (d) any assets, contracts, or leases excluded from the Transaction; (e) the Qualified Bidder's experience and ability in managing healthcare assets, including long term acute care hospitals; and (f) any other factors that the Debtors may deem relevant to the proposed Transaction.

The Good Faith Deposits of all Qualified Bidders shall be held by the Escrow Agent in a separate account for the Debtors' benefit. If a Successful Bidder fails to consummate an approved Transaction because of a breach or failure to perform on the part of such Successful Bidder, such Successful Bidder's Good Faith Deposit will be forfeited to the Debtors. Any disputes with respect to the transfer of the Good Faith Deposits shall be resolved by the Bankruptcy Court.

**E.      CREDIT BID**

On or before the Bid Deadline, parties holding a valid lien on some or all of the Acquired Assets that secures an allowed secured claim may submit a credit bid for some or all of such Acquired Assets to the fullest extent permitted under section 363(k) of the Bankruptcy Code. The parties reserve their rights to object to SHP's ability to credit bid the full face amount of the BB&T Debt.

**F.      MODIFICATIONS/RESERVATION OF RIGHTS**

After consulting with the Committee, the Debtors may (i) determine, in their reasonable discretion, which Qualified Bid or Qualified Bids, if any, to present to the Bankruptcy Court as the highest or otherwise best offer for the Acquired Assets, (ii) reject, at any time before entry of an order of the Bankruptcy Court approving any Qualified Bid as the Successful Bid, any bid that, in the Debtors' reasonable discretion, is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code or these Bidding Procedures, or (c) contrary to the best interests of the Debtors and their bankruptcy estates and creditors; provided, that the Stalking Horse Purchaser's bid and the Stalking Horse Agreement, after approval of these Bidding Procedures, may not be rejected under (a), (b), or (c) of this provision, (iii) withdraw, in their business judgment, the Motion, as modified, if pursuing approval of the Motion, as modified, is determined to be contrary to the best interests of the Debtors and their bankruptcy estates and creditors, and (iv) cancel, in their business judgment, the Auction and pursue an alternative transaction if such alternative transaction is determined to be in the best interests of the Debtors and their bankruptcy estates and creditors.   The right of a party in interest to challenge any of the foregoing, if any, is preserved.

The Debtors may extend or alter any deadline contained in these Bidding Procedures that will better promote their receipt of higher or otherwise better offers for the Acquired Assets and Designated Contracts.  These Bidding Procedures are solely for the benefit of the Debtors and their bankruptcy estates. The Debtors may waive or modify the provisions in these Bidding Procedures or adopt additional procedures as they see fit in their business judgment after consulting with the Committee.   The right of a party in interest to challenge such actions, if any, is preserved.

**G.      AUCTION**

If the Debtors do not receive any Qualified Bids other than from the Stalking Horse Purchaser, they will not hold an Auction and the Stalking Horse Purchaser will be named the Successful Bidder, subject to entry of the Sale Order.

If more than one Qualified Bid has been received, the Debtors will conduct an Auction for the sale of the Acquired Assets.  Prior to the Auction, the Debtors shall send a copy of all Qualified Bids to all Qualified Bidders.  The Auction shall take place on **June 23, 2014 at 10:00 a.m. (prevailing Eastern Time)** at the offices of Pillsbury Winthrop Shaw Pittman LLP, 2300 N Street, NW, Washington, DC 20037-1122, or such later time or such other place as the Debtors shall designate in a subsequent notice to all Qualified Bidders and Notice Parties. The Auction may be adjourned or rescheduled without further notice by an announcement of the adjourned date at the Auction. The Debtors reserve the right to cancel the Auction in their reasonable discretion.

Unless otherwise ordered by the Court for cause shown, only the Stalking Horse Purchaser and Qualified Bidders will be eligible to participate at the Auction. Representatives of the following parties-in-interest shall be entitled to attend and observe the Auction: Debtors, Committee, Qualified Bidders, holders of liens encumbering the Acquired Assets, and federal and local regulators. The Debtors, in their discretion, may deny access to the Auction to any other entity or person, including the media.

Each Qualified Bidder may be required to confirm at the commencement of and from time to time during the Auction that it has not engaged in any collusive behavior with respect to the sale of the Acquired Assets, the bidding or the Auction. Bidding at the Auction will be videotaped and/or transcribed.

The bidding shall start at the amount offered in the highest or otherwise best Qualified Bid, as determined and announced by the Debtors, in consultation with their advisors, and will continue in increments of at least $100,000 until the bidding ceases. The Stalking Horse Purchaser will have the right to credit bid all indebtedness that is owed under the DIP Loan as of the Closing Date.

Prior to the conclusion of the Auction, the Debtors, in consultation with their advisors and the Committee, will (a) review the last bid by each of the Qualified Bidders made at the Auction on the basis of financial and contractual terms and such factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the sale, (b) determine the highest or otherwise best bid or combination of bids for the Acquired Assets and Designated Contracts at the Auction (the "**Successful Bid**"), and (c) notify all Qualified Bidders at the Auction of the name of the Successful Bidder. The Debtors will present the Successful Bid to the Court for approval at the Sale Hearing.

After determining the Successful Bid, the Debtors may, in consultation with their advisors and the Committee, determine which Qualified Bid is the next best bid (the "**Next Best Bid**"). The Debtors will present the Next Best Bid to the Court for Approval at the Sale Hearing. If the Successful Bidder does not close the Transaction by the date set forth in the Successful Bid or otherwise agreed to by the Debtors and the Successful Bidder, then the Debtors shall be authorized to close with the party that submitted the Next Best Bid (the "**Next Best Bidder**"), without a further court order. The party that submits the Next Best Bid shall be required to close the Transaction by the date set forth in the Next Best Bid (excusing the time between the Auction and the date the Next Best Bidder is advised that the Debtors will seek to close under the Next Best Bid), or otherwise agreed to by the Debtors and the Next Best Bidder.

All bidders at the Auction shall be deemed to have consented to these Bidding Procedures and to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Auction, the sale and the construction and enforcement of the applicable Asset Purchase Agreement.

## H.   NO ENTITLEMENT TO FEES FOR POTENTIAL BIDDERS OR QUALIFIED BIDDERS

The performance of due diligence, the tendering of a bid, the determination that a bid is a Qualified Bid or the participation of a Qualified Bidder at the Auction shall not entitle a potential qualified bidder or Qualified Bidder to any breakup, termination or similar fee or

reimbursement of expenses and all potential qualified bidders and Qualified Bidders waive any right to seek a claim for substantial contribution. Notwithstanding the foregoing, the Stalking Horse Purchaser shall be entitled to payment of the Breakup Fee and the Expense Reimbursement as provided in the Stalking Horse Agreement and the order approving these Bidding Procedures.

## I.      RETURN OF THE GOOD FAITH DEPOSIT

The Good Faith Deposits of Qualified Bidders shall be held in escrow by the Escrow Agent.  The Good Faith Deposits of all potential qualified bidders that are determined not to be Qualified Bidders shall be returned promptly by the Escrow Agent.  The Good Faith Deposits of all Qualified Bidders, other than the Successful Bidder and the Next Best Bidder, shall be returned within two (2) business days after the conclusion of the Sale Hearing (as defined below).

The Good Faith Deposit of the Next Best Bidder shall be returned within two (2) business days after the consummation of the Transaction with the Successful Bidder, but in no event later than seventy (70) days after the Sale Hearing.

## J.      AS IS, WHERE IS

The Transaction shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtors, their estates, or their agents or representatives.  Except as otherwise expressly provided in these Bidding Procedures, the Stalking Horse Agreement, or any applicable Asset Purchase Agreement, each Qualified Bidder shall be deemed to acknowledge and represent that it (i) has had an opportunity to conduct any and all reasonable due diligence regarding the Acquired Assets and Designated Contracts prior to making its bid, (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Acquired Assets and Designated Contracts in making its bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Acquired Assets and Designated Contracts, or the completeness of any information provided in connection therewith.

## K.      SALE HEARING

The Debtors will seek entry of an order from the Bankruptcy Court at a hearing (the "**Sale Hearing**") to begin on **June 25, 2014 at 10:30 a.m. (prevailing Eastern Time)** to approve and authorize the Transaction with the Successful Bidder and conditionally approve the Transaction with the Next Best Bidder.[3]  The Sale Hearing may be adjourned or rescheduled without further notice by an announcement of the adjourned date at the Sale Hearing.

---

[3]      The deadline for objecting to the sale, including the assumption and assignment of executory contracts, is **2:00 p.m. on June 24, 2014**.

**<u>Exhibit 2</u>**

**IN RE SPECIALTY HOSPITAL OF WASHINGTON, LLC,** *et al.*
**MODIFIED BIDDING PROCEDURES**[1]
**(June 4, 2014 – Final Version)**

Set forth below are the modified bidding procedures (the "**Bidding Procedures**") to be employed in connection with the sale (the "**Transaction**") of substantially all of the assets (collectively, the "**Acquired Assets**") of Specialty Hospital of America, LLC; SHA Management, LLC; Specialty Hospital of Washington, LLC; Specialty Hospitals of Washington Nursing Center, LLC; Specialty Hospital of Washington Hadley, LLC; SHA Holdings, Inc.; and SHA Hadley SNF, LLC (collectively, the "**Debtors**"), as debtors and debtors-in-possession in these chapter 11 cases (the "**Cases**"), which are currently pending in the United States Bankruptcy Court for the District of Columbia (the "**Bankruptcy Court**"). The Acquired Assets to be sold and the terms and conditions upon which the Debtors contemplate consummating a sale are further described in that certain "**Stalking Horse Term Sheet**", which outlines the principle terms of a stalking horse asset purchase agreement (the "**Stalking Horse Agreement**") to be entered entered into between the Debtors and DCA Acquisitions, LLC (the "**Stalking Horse Purchaser**" or "**SHP**").  A copy of the Stalking Horse Agreement may be obtained upon written request to  the Debtors' investment banker, Cain Brothers & Company, LLC, 360 Madison Avenue, New York, NY 10017 (Attn: Michael S. Zarriello, mzariello@cainbrothers.com; Bryan Cloncs, bcloncs@cainbrothers.com; Gregory J. Hychko, ghychko@cainbrothers.com).

The sale of the Acquired Assets is subject to competitive bidding as set forth herein and approval by the Bankruptcy Court pursuant to sections 363 and 365 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure. The Transaction shall also include the assumption and assignment of certain designated executory contracts and unexpired leases (collectively, the "**Designated Contracts**") under sections 363 and 365 of the Bankruptcy Code according to the process outlined below.

## A.     MARKETING BY THE DEBTORS

The Debtors shall, in consultation with the Committee: (a) coordinate the efforts of potential bidders in conducting their respective due diligence, (b) evaluate bids from potential bidders, (c) negotiate any bid made to acquire the Acquired Assets and assume Designated Contracts, (d) conduct an auction (the "**Auction**") if a Qualified Bid is received other than the Stalking Horse Agreement, and (e) make such other determinations as are provided in these Bidding Procedures.  Neither the Debtors nor their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Acquired Assets, or any portion thereof, to any person who is not, in the Debtors'

---

[1]     The Bidding Procedures as approved by the Court on June 2, 2014, are hereby modified pursuant to Section F, which states, in part: "The Debtors may waive or modify the provisions in these Bidding Procedures or adopt additional procedures as they see fit in their business judgment."  All modifications reflected herein have been approved by the Committee.

reasonable judgment, in consultation with their advisors and consultation with the Committee, a potential qualified bidder.

## B.     BID DEADLINE

A potential bidder that desires to make a bid shall deliver copies of its bid package by email to: (i) counsel to the Debtors, Pillsbury Winthrop Shaw Pittman LLP, 2300 N Street, NW, Washington, ~~D.C.~~DC 20037-1122 (Attn: Patrick Potter, patrick.potter@pillsburylaw.com) and Pillsbury Winthrop Shaw Pittman LLP, 1540 Broadway, New York, NY (Attn: Andrew Troop, andrew.troop@pillsburylaw.com); (ii) the Debtors' financial advisor, Alvarez & Marsal Healthcare Industry Group, LLC, 600 Madison Avenue, 8th Floor, New York, NY 10022 (Attn: Ronald Winters, rwinters@alvarezandmarsal.com; Maria Arnaoudona, marnaoudona@alvarezandmarsal.com); (iii) the Debtors' investment banker, Cain Brothers & Company, LLC, 360 Madison Avenue, New York, NY 10017 (Attn: Michael S. Zarriello, mzariello@cainbrothers.com; Bryan Clonz, bclonz@cainbrothers.com; Gregory J. Hychko, ghychko@cainbrothers.com); and (iv) counsel to the official committee of unsecured creditors (the "**Committee**"), Weily Rein LLP, 1776 K Street, NW, Washington, DC 20006 (Attn: Valerie P. Morrison, vmorrison@wileyrein.com; Dylan Trache, dtrache@wileyrein.com), so as to be actually received on or before **June 20, 2014 at 5:00 p.m. (prevailing Eastern Time)** (the "**Bid Deadline**"), which deadline may be extended by the Debtors.  No bids submitted after the Bid Deadline shall be considered by the Debtors.

## C.     DUE DILIGENCE

Subject to a potential bidder entering into a confidentiality agreement satisfactory to the Debtors in their business judgment, the Debtors may afford any potential bidder, whom the Debtors, in consultation with their advisors, believe has the wherewithal to close the Transaction, the opportunity to conduct a reasonable due diligence review in the manner determined by the Debtors in their discretion. The Debtors shall not be obligated to, but may, furnish access to any due diligence information of any kind after the Bid Deadline. The Debtors ~~intend to~~shall use reasonable efforts to provide to all potential qualified bidders certain information in connection with the proposed sale and assumption and assignment of Designated Contracts, including, among other things, access to the Debtors' data room established for this purpose, these proposed Bidding Procedures and the Stalking Horse Agreement.  However, the Debtors' ~~failure~~refusal to deliver any such information to any potential bidders based upon the exercise of their business judgment, after consultation with the Committee, shall not affect the validity, effectiveness or finality of the Auction or the sale process; provided, further, that nothing herein shall impact the right of any party in interest to object to the sale or support the objection and/or bid of any potential bidder on the basis that such potential bidder was not provided sufficient information.

All diligence inquiries must be directed to Alvarez & Marsal Healthcare Industry Group, LLC, 600 Madison Avenue, 8th Floor, New York, NY 10022 (Attn: Ronald Winters, rwinters@alvarezandmarsal.com; Maria Arnaoudona, marnaoudona@alvarezandmarsal.com); and the Debtors' investment banker, Cain Brothers & Company, LLC, 360 Madison Avenue, New York, NY 10017 (Attn: Michael S. Zarriello, mzariello@cainbrothers.com; Bryan Cloncs, bcloncs@cainbrothers.com; Gregory J. Hychko, ghychko@cainbrothers.com).  Inquiries may be made by either email or regular mail.  The Debtors shall apprise the Committee of all requests for due diligence and the status thereof.

### D.     BID REQUIREMENTS

A bid submitted will be considered a qualified bid and the potential bidder will be considered a qualified bidder (a "**Qualified Bid**" and "**Qualified Bidder**," respectively), only if the bid is submitted by a bidder that in the Debtors' business judgment, in consultation with their advisors and the Committee, complies with all of the following requirements:

    a.    The bid states that the potential qualified bidder offers to purchase, in cash, the Acquired Assets and to assume liabilities and/or contracts (or offers to purchase less than all of the Acquired Assets, including the exclusion of the Debtors' accounts receivable) upon the terms and conditions that the Debtors in their business judgment, in consultation with their advisors and the Committee, reasonably determine are no less favorable to the Debtors than those set forth in the Stalking Horse Agreement;

    b.    The bid includes a signed writing that the potential qualified bidder's offer is irrevocable until the selection of the Successful Bidder (as such term is used in the Order approving these Bidding Procedures and Debtors' motion seeking various relief, including approval of these Bidding Procedures (the "**Motion**")), provided that if such potential qualified bidder is selected as (A) the Successful Bidder, its offer shall remain irrevocable until the earlier of (i) the outside date by which all regulatory approvals and other conditions to closing shall have been satisfied or waived, (ii) the date the Sale Order is entered if the sale transaction with such potential qualified bidder is denied or (iii) the date that is sixty-five (65) days after the Sale Hearing, or (B) the Next Best Bidder (as defined below), its offer shall remain irrevocable until the earlier of (i) the closing of the sale to the Successful Bidder, or (ii) the date that is thirty (30) days after the earlier of (I) the outside date by which all regulatory approvals or other conditions to closing under the Successful Bidder's asset purchase agreement shall have been satisfied or waived, or (II) the date that is sixty-five (65) days after the Sale Hearing;

    c.    There are no conditions precedent to the potential qualified bidder's ability to enter into a definitive enforceable agreement and that all necessary internal and shareholder approvals have been obtained prior to the Bid Deadline; and there are no conditions precedent (due diligence, financing, or otherwise) to the closing of the Transaction, other than conditions precedent consistent with those set forth in the Stalking Horse Agreement;

    d.    The bid includes a duly authorized and executed copy of an asset purchase agreement (an "**Asset Purchase Agreement**"), including the purchase price for the Assets (the "**Proposed Purchase Price**"), together with all exhibits and schedules thereto, together with copies marked to show any amendments and modifications to the Stalking Horse Agreement and the proposed order to approve the sale by the Bankruptcy Court;

    e.    The Bid includes written evidence of a firm, irrevocable commitment for debt or equity financing, or other evidence of ability to consummate the proposed sale transaction, that will allow the Debtors in their business judgment, in

consultation with their advisors and the ~~Comittee~~Committee, to make a determination as to the bidder's financial, regulatory, and other capabilities to consummate the sale transaction contemplated by the Asset Purchase Agreement;

f.   The bid has value to the Debtors that is greater than or equal to (i) the Total Transaction Value,[12] plus (ii) $1.5 million (the "**Breakup Fee**"), plus (iii) the Expense Reimbursement, as defined in the Stalking Horse Agreement (but in any event capped at $1.3 million), plus (iv) $100,000 (the "**Initial Overbid**");

g.   The bid identifies with particularity which executory contracts and unexpired leases the potential qualified bidder designates to assume, and provides details of the potential qualified bidder's proposal for the payment (or treatment) of related cure costs with respect to the Designated Contracts;

h.   The bid includes an acknowledgement and representation that the potential qualified bidder:  (i) has had an opportunity to conduct any and all required due diligence regarding the Acquired Assets and Designated Contracts prior to making its bid; (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Acquired Assets and Designated Contracts in making its bid; (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Acquired Assets and Designated Contracts or the completeness of any information provided in connection therewith or with the Auction, except as expressly stated in the Asset Purchase Agreement; and (iv) is not entitled to and waives any right to assert a claim for any expense reimbursement, breakup fee, or similar type of payment in connection with its due diligence and bid;

i.   The bid includes evidence, in form and substance reasonably satisfactory to the Debtors (with Committee consultation), of authorization and approval from the potential qualified bidder's board of directors (or comparable

---

[12]   The term Total Transaction Value means:  The purchase price (the "**Purchase Price**") for the purchase, sale, assignment and conveyance of the Debtors' right, title and interest in, to and under the Acquired Assets (as defined ~~below~~above), free and clear of all interests, claims, liens and encumbrances pursuant to section 363(f) of the Bankruptcy Code, ~~which~~ shall consist of: (a) a $15 million DIP loan term facility, with all sums owing thereon to be credit-bid by the Purchaser at closing pursuant to Bankruptcy Code Section 363(k); plus (b) the assumption by the Stalking Horse Purchaser of certain liabilities set forth in the Stalking Horse Agreement, including the Regulatory Agreements, and the payment of the Cure Costs (as defined below) relating to the Designated Contracts; plus (c) an amount not to exceed $200,000 (or as otherwise approved by the Stalking Horse Purchaser in its sole discretion), to conduct the orderly wind-down or dismissal of the bankruptcy ~~cases~~case(s) following the sale contemplated by the Transaction; and plus (d) in the sole discretion of SHP, an amount up to ~~the face amount~~$10,000,000 of the BB&T Debt, which has been purchased by  and assigned to SHP ~~in satisfaction of all claims BB&T has or may have in respect~~.  SHP reserves the right to credit bid up to the face amount of the BB&T Debt, including~~,~~ without limitation~~,~~ BB&T's first priority lien on the Owned Real Property, and the parties reserve the right to object to any such credit bid.

governing body) with respect to the submission, execution, delivery and
closing of the Asset Purchase Agreement, and any amendments thereto
negotiated or occasioned by its participation in the Auction;

j.      The bid is accompanied by a good faith deposit in the form of a wire transfer
(to an escrow agent specified by the Debtors (the "**Escrow Agent**")), certified
check or such other form acceptable to the Debtors, payable to the order of the
Escrow Agent in an amount equal to ten percent (10%) of the Proposed
Purchase Price (the "**Good Faith Deposit**");

k.      The bid contains sufficient information, in the Debtors' business judgment in
consultation with its advisors and the Committee, concerning the potential
qualified bidder's ability to provide adequate assurance of performance with
respect to executory contracts and unexpired leases;

l.      The bidder commits to supplement the bid with other information reasonably
requested by the Debtors or the Committee before or after the Bid Deadline;
and

m.      The bid is received by the relevant parties set forth in the Bidding Procedures
prior to the Bid Deadline.

The Debtors, the Committee and their professionals will review each potential
qualified bid received from a potential qualified bidder to ensure that both the bid and the
bidder meet the requirements set forth above. A potential qualified bid received from a
potential qualified bidder that the Debtors, in consultation with the Committee, determine
meets the above requirements will be considered a "Qualified Bid" and each potential bidder
that submits a Qualified Bid will be considered a "Qualified Bidder."  The Debtors, in their
business judgment and in consultation with the Committee, reserve the right to reject any
bid, without limitation.

The Stalking Horse Agreement is a Qualified Bid for all purposes and the Stalking
Horse Purchaser is a Qualified Bidder for all purposes and requirements pursuant to these
Bidding Procedures at all times.

The Debtors, in consultation with the Committee, may value a Qualified Bid based
upon any and all factors that the Debtors deem pertinent, including, among others: (a) the
Proposed Purchase Price of the Qualified Bid and the assumption of cure obligations
respecting the assumption and assignment of Designated Contracts; (b) the risks and timing
associated with consummating the Transaction with the Qualified Bidder, including, without
limitation, all necessary regulatory approvals; (c) the risks associated with and extent of any
non-cash consideration in any Qualified Bid; (d) any assets, contracts, or leases excluded
from the Transaction; (e) the Qualified Bidder's experience and ability in managing
healthcare assets, including long term acute care hospitals; and (f) any other factors that the
Debtors may deem relevant to the proposed Transaction.

The Good Faith Deposits of all Qualified Bidders shall be held by the Escrow
Agent in a separate account for the Debtors' benefit.  If a Successful Bidder fails to
consummate an approved Transaction because of a breach or failure to perform on the part
of such Successful Bidder, such Successful Bidder's Good Faith Deposit will be forfeited

to the Debtors.  Any disputes with respect to the transfer of the Good Faith Deposits shall be resolved by the Bankruptcy Court.

**E.    CREDIT BID**

On or before the Bid Deadline, parties holding a valid lien on some or all of the Acquired Assets that secures an allowed secured claim may submit a credit bid for some or all of such Acquired Assets to the fullest extent permitted under section 363(k) of the Bankruptcy Code. The parties reserve their rights to object to SHP's ability to credit bid the full face amount of the BB&T Debt.

**F.    MODIFICATIONS/RESERVATION OF RIGHTS**

After consulting with the Committee, the Debtors may (i) determine, in their reasonable discretion, which Qualified Bid or Qualified Bids, if any, to present to the Bankruptcy Court as the highest or otherwise best offer for the Acquired Assets, (ii) reject, at any time before entry of an order of the Bankruptcy Court approving any Qualified Bid as the Successful Bid, any bid that, in the Debtors' reasonable discretion, is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code or these Bidding Procedures, or (c) contrary to the best interests of the Debtors and their bankruptcy estates and creditors; provided, that the Stalking Horse Purchaser's bid and the Stalking Horse Agreement, after approval of these Bidding Procedures, may not be rejected under (a), (b), or (c) of this provision, (iii) withdraw, in their business judgment, the Motion, as modified, if pursuing approval of the Motion, as modified, is determined to be contrary to the best interests of the Debtors and their bankruptcy estates and creditors, and (iv) cancel, in their business judgment, the Auction and pursue an alternative transaction if such alternative transaction is determined to be in the best interests of the Debtors and their bankruptcy estates and creditors.  The right of a party in interest to challenge any of the foregoing, if any, is preserved.

The Debtors may extend or alter any deadline contained in these Bidding Procedures that will better promote their receipt of higher or otherwise better offers for the Acquired Assets and Designated Contracts.  These Bidding Procedures are solely for the benefit of the Debtors and their bankruptcy estates. The Debtors may waive or modify the provisions in these Bidding Procedures or adopt additional procedures as they see fit in their business judgment after consulting with the Committee.  The right of a party in interest to challenge such actions, if any, is preserved.

**G.    AUCTION**

If the Debtors do not receive any Qualified Bids other than from the Stalking Horse Purchaser, they will not hold an Auction and the Stalking Horse Purchaser will be named the Successful Bidder, subject to entry of the Sale Order.

If more than one Qualified Bid has been received, the Debtors will conduct an Auction for the sale of the Acquired Assets.  Prior to the Auction, the Debtors shall send a copy of all Qualified Bids to all Qualified Bidders.  The Auction shall take place on **June 23, 2014 at 10:00 a.m. (prevailing Eastern Time)** at the offices of Pillsbury Winthrop Shaw Pittman LLP, 2300 N Street, NW, Washington, D.C. DC 20037-1122, or such later time or such other place as the Debtors shall designate in a subsequent notice to all Qualified Bidders and Notice Parties. The Auction may be adjourned or rescheduled without further

notice by an announcement of the adjourned date at the Auction. The Debtors reserve the right to cancel the Auction in their reasonable discretion.

Unless otherwise ordered by the Court for cause shown, only the Stalking Horse Purchaser and Qualified Bidders will be eligible to participate at the Auction. Representatives of the following parties-in-interest shall be entitled to attend and observe the Auction: Debtors, Committee, Qualified Bidders, holders of liens encumbering the Acquired Assets, and federal and local regulators. The Debtors, in their discretion, may deny access to the Auction to any other entity or person, including the media.

Each Qualified Bidder may be required to confirm at the commencement of and from time to time during the Auction that it has not engaged in any collusive behavior with respect to the sale of the Acquired Assets, the bidding or the Auction. Bidding at the Auction will be videotaped and/or transcribed.

The bidding shall start at the amount offered in the highest or otherwise best Qualified Bid, as determined and announced by the Debtors, in consultation with their advisors, and will continue in increments of at least $100,000 until the bidding ceases. The Stalking Horse Purchaser will have the right to credit bid all indebtedness that is owed under the DIP Loan as of the Closing Date.

Prior to the conclusion of the Auction, the Debtors, in consultation with their advisors and the Committee, will (a) review the last bid by each of the Qualified Bidders made at the Auction on the basis of financial and contractual terms and such factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the sale, (b) determine the highest or otherwise best bid or combination of bids for the Acquired Assets and Designated Contracts at the Auction (the "**Successful Bid**"), and (c) notify all Qualified Bidders at the Auction of the name of the Successful Bidder. The Debtors will present the Successful Bid to the Court for approval at the Sale Hearing.

After determining the Successful Bid, the Debtors may, in consultation with their advisors and the Committee, determine which Qualified Bid is the next best bid (the "**Next Best Bid**"). The Debtors will present the Next Best Bid to the Court for Approval at the Sale Hearing. If the Successful Bidder does not close the Transaction by the date set forth in the Successful Bid or otherwise agreed to by the Debtors and the Successful Bidder, then the Debtors shall be authorized to close with the party that submitted the Next Best Bid (the "**Next Best Bidder**"), without a further court order. The party that submits the Next Best Bid shall be required to close the Transaction by the date set forth in the Next Best Bid (excusing the time between the Auction and the date the Next Best Bidder is advised that the Debtors will seek to close under the Next Best Bid), or otherwise agreed to by the Debtors and the Next Best Bidder.

All bidders at the Auction shall be deemed to have consented to these Bidding Procedures and to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Auction, the sale and the construction and enforcement of the applicable Asset Purchase Agreement.

## H.    NO ENTITLEMENT TO FEES FOR POTENTIAL BIDDERS OR QUALIFIED BIDDERS

The performance of due diligence, the tendering of a bid, the determination that a bid is a Qualified Bid or the participation of a Qualified Bidder at the Auction shall not entitle a potential qualified bidder or Qualified Bidder to any breakup, termination or similar fee or reimbursement of expenses and all potential qualified bidders and Qualified Bidders waive any right to seek a claim for substantial contribution. Notwithstanding the foregoing, the Stalking Horse Purchaser shall be entitled to payment of the Breakup Fee and the Expense Reimbursement as provided in the Stalking Horse Agreement and the order approving these Bidding Procedures.

**I.      RETURN OF THE GOOD FAITH DEPOSIT**

The Good Faith Deposits of Qualified Bidders shall be held in escrow by the Escrow Agent.  The Good Faith Deposits of all potential qualified bidders that are determined not to be Qualified Bidders shall be returned promptly by the Escrow Agent.  The Good Faith Deposits of all Qualified Bidders, other than the Successful Bidder and the Next Best Bidder, shall be returned within two (2) business days after the conclusion of the Sale Hearing (as defined below).

The Good Faith Deposit of the Next Best Bidder shall be returned within two (2) business days after the consummation of the Transaction with the Successful Bidder, but in no event later than seventy (70) days after the Sale Hearing.

**J.      AS IS, WHERE IS**

The Transaction shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtors, their estates, or their agents or representatives.  Except as otherwise expressly provided in these Bidding Procedures, the Stalking Horse Agreement, or any applicable Asset Purchase Agreement, each Qualified Bidder shall be deemed to acknowledge and represent that it (i) has had an opportunity to conduct any and all reasonable due diligence regarding the Acquired Assets and Designated Contracts prior to making its bid, (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Acquired Assets and Designated Contracts in making its bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Acquired Assets and Designated Contracts, or the completeness of any information provided in connection therewith.

**K.      SALE HEARING**

The Debtors will seek entry of an order from the Bankruptcy Court at a hearing (the "**Sale Hearing**") to begin on **June 25, 2014 at 10:30 a.m. (prevailing Eastern Time)** to approve and authorize the Transaction with the Successful Bidder and conditionally approve the Transaction with the Next Best Bidder.[23]   The Sale Hearing may be adjourned or rescheduled without further notice by an announcement of the adjourned date at the Sale Hearing.

---

[23]      The deadline for objecting to the sale, including the assumption and assignment of executory contracts, is **2:00 p.m. on June 24, 2014**.

| **Summary Report:** Litéra® Change-Pro ML IC 6.5.0.460 Document Comparison done on 6/6/2014 9:19:22 AM | |
|---|---|
| **Style Name:** Default Style | |
| **Original Filename:** Ex 1 - Bid Procedures.docx | |
| **Original DMS:** | |
| **Modified Filename:** | |
| **Modified DMS:** iw://DCGATEWAY/US_SE/404540266/2 | |
| **Changes:** | |
| Add | 35 |
| Delete | 18 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| **Total Changes:** | 53 |